## PING v. UNITED STATES.

### Civ. A. No. 9508.

United States District Court
E. D. Michigan, S. D.

July 18, 1952.

Hugh K. Davidson, Davidson & Theut, Detroit, Mich., and Bernard G. Sloan, Allen Park, Mich., for plaintiff.

Philip A. Hart, U. S. Atty., John F. Noonan, Asst. U. S. Atty., Peter C. Charuhas, Atty., Department of Justice, Washington, D. C., for defendant.

LEVIN, District Judge.

The court has before it a motion for a judgment non obstante veredicto or for a new trial. The verdict was for the plaintiff in the amount of $10,000, the face value of a National Service Life Insurance policy issued by the defendant, the United States Government. The motion is denied.

The action was brought by the plaintiff as beneficiary under the policy which had been issued to her son at a time when he was a member of the Armed Forces of the United States. It was agreed by the parties that the policy had been properly issued, that the insured had elected to continue his insurance after his discharge from the service and had in fact paid premiums at least until May of 1946, and that the insured died on September 11, 1946, a date when the policy would have been in force if the premiums through August of 1946 had been paid.

At the trial the plaintiff introduced a receipt issued by the defendant, acknowledging payment of the August 1946 premium on the form used for policies in good standing. It was the Government's position that the premiums from June 1946 to the date of the insured's death had not been paid and that the policy had lapsed on May 10, 1946. To substantiate that contention, the Government submitted records kept by the Veterans' Administration in which payment of premiums from the policy's date of issuance through May 1946 were recorded but which contained no record of premiums from July through August of 1946, and an official testified that the records indicated that payments for those months—June, July and August of 1946—were not received by the Government. He outlined the method and procedure followed in keeping premium payment records and the method used by the Government in issuing premium receipts. He had no personal knowledge

of the receipt held by the plaintiff or of the records introduced in evidence at the trial, and therefore could not testify to more than the general processes by which they were produced, but he did testify that the section of the Veterans' Administration handling National Service Life Insurance policies and servicing the policy with which we are here concerned was being moved from New York to Columbus during the period in question; that fifty thousand premium record cards (out of a total of over two million) were sent to Columbus in August and used in a training program involving "some fifteen or sixteen hundred people * * * totally strange to insurance practices"; that there was no way of knowing whether the Ping record was among those sent to Columbus before October 1946, the month that office began to function officially, and no way of knowing whether the receipt here placed in evidence was issued from New York or Columbus. He admitted on cross-examination that many mistakes are made in the ordinary operation of his office, and his testimony indicated that at the time when the Ping insurance is claimed to have lapsed and when the disputed receipt was issued there was unusual confusion and opportunity for error. All of this evidence was submitted to the jury and it was their conclusion that the policy had not lapsed.

■ It is the universal rule that a beneficiary of an insurance policy has established a prima facie case when the policy, naming the plaintiff as beneficiary, and proper proof of the death of the insured have been introduced in evidence. At that point payment will be inferred from the existence of the policy. However, once affirmative evidence of nonpayment of premiums is introduced by the insurer, the presumption disappears, and the plaintiff must introduce evidence of payment if he would avoid a directed verdict for the insurer. These rules of evidence are everywhere adhered to but they do not require, as contended, a directed verdict in the Government's behalf in this action.

The Government's main argument rests on the proposition that plaintiff established a prima facie case by reliance on a legal presumption that when affirmative evidence in support of the Government's position was introduced the presumption disappeared and that a verdict should then have been directed for the defendant.

■ The Government's argument is fallacious because it ignores the fact that the plaintiff did not, in fact, rest her case on a legal presumption; affirmative evidence of payment was introduced in her behalf in the form of the receipt for the August 1946 premium. Therefore, it was proper to submit the question of payment to the jury because evidence had been introduced to show both payment and nonpayment of the premiums to the date of the insured's death. The evidence did not clearly support either the plaintiff's or the defendant's position. The plaintiff's case rested on the inference that the August premium would not have been accepted and a receipt issued therefor unless payment of the intervening June and July premiums had also been received and unless the policy had been considered in force; the Government's case rested on the inference that no mistake could have been made in keeping its records of payment of premiums but that a mistake was probable in the issuance of the August receipt. The weight to be given to the evidence and the inferences to be drawn therefrom were matters for the jury to decide.

The Government urges that this court consider the recent case of Betterly v. United States, D.C., 102 F.Supp. 454, 457, in which Chief Judge Watson of the Middle District of Pennsylvania reached a contrary conclusion. That case differed from the case at bar in that the receipt for a premium payment was made about a year after the Government's records showed lapse of payment of premiums. The receipt was held by the court to be a mere acknowledgment of money received and not a "duly authenticated receipt for payment of a premium by insured". The records introduced by the

Government were complete and showed that the money for which the receipt was issued had been received, but that it was not credited as a premium payment on the record card of the insured. In the case at bar there was simply no record of any money having been received.

■ But even if no factual distinction between that case and the present action could be found, that decision is not persuasive in considering the motion now before me. That case was tried by the judge without a jury. Had I been the trier of the facts in the present action I might have reached a conclusion different from that announced by the jury, but that is not a reason for setting aside its verdict.

"It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. * * *. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520.

See also Pennsylvania R. R. v. Goldie, 6 Cir., 182 F.2d 9, and cases cited therein.

The real problem involved here is one of the burden of proof although this question is not emphasized by the Government. The court had charged the jury that the burden of proof of nonpayment of the disputed premiums was upon the Government, the insurer in this case. It is the rule in all jurisdictions that when the plaintiff has made a prima facie case by submitting proof of the policy and the death of the insured, the burden of going forward with the evidence is upon the insurer. But there is a divergence of opinion as to whether or not the burden of proof shifts to the insurer. In a majority of those jurisdictions that have considered the question, including Michigan, it is the rule that the burden of proof of nonpay-

ment of premiums is upon the insurer. Wilson v. Prudential Insurance Co., 276 Mich. 232, 267 N.W. 824.

The lack of uniformity in procedure stems from conflicting interpretations of the insurance contract; in jurisdictions where the payment of premiums is considered a condition precedent, the burden of proof of payment is placed on the person claiming under the contract; where such payment is considered a condition subsequent, the burden of proving nonpayment is placed upon the insurer. 95 A.L.R. 745, et seq.

■■ The law applicable in this situation is the law of the place where the contract was made. There was no evidence on this point. However, if the contract was made in Michigan the court's charge as to the burden of proof is clearly correct: Wilson v. Prudential Insurance Co., supra; Strong v. Hercules Life Insurance Co., 284 Mich. 573, 280 N.W. 55. Although the Federal law is not so definitely settled, it is thought that the charge was equally correct if the contract was made in the District of Columbia. The Supreme Court has adopted the view that payment of premiums is a condition subsequent in an insurance contract, Burnet v. Wells, 289 U.S. 670 and 679, 53 S.Ct. 761, 77 L.Ed. 1439 from which it follows that nonpayment is an affirmative defense to be established by the insurer.

This was the conclusion reached in a well-considered opinion written by Judge Kalodner in Rodgers v. United States, D.C., 66 F.Supp. 663, an action on a National Service Life Insurance policy, one of two reported cases in which the problem of the burden of proof of payment of insurance premiums on a Government issued policy has been squarely presented. See also Betterly v. United States, supra.

In 21 Appleman, Insurance Law and Practice, Sec. 12114, it is suggested that the minority rule obtains where warrisk insurance is involved, and a Sixth Circuit decision, McCune v. United States, 6 Cir., 56 F.2d 572, is cited in support of that view. An examination of that case shows, however, that the question of the

burden of proof of payment of premiums did not arise in that action. The plaintiff in that case relied on a legal presumption in proving the death of the insured and was unable to prove the date of death to be prior to the undisputed time of the lapse of the insurance policy for non-payment of premiums; in that situation the court said that the burden of proof was upon the plaintiff to show that the death occurred before the policy lapsed for nonpayment of premiums.

Although the Government in this action does not rely on the McCune case as stating a different rule for war-risk insurance, it does contend that the Government is not subject to the ordinary rules of law governing private insurance companies. The cases on this point cited by the Government are those which affirm that the various laws under which war-risk and other veterans' insurance plans are administered, to the extent that they are applicable, supersede the pertinent law previously in force. But recognition that Congress has the power to designate the party on whom the burden of proof shall fall in the kind of action now before this court adds nothing to the Government's case. Congress has not spoken on this question, and the applicable law must be learned from sources other than statutes. Such sources do not indicate that the United States is in any different position on this question of the burden of proof from private parties in a similar action. See Rodgers v. United States, supra.

The Government also urges, on the basis of decided cases, that it was not proper to consider the Government as estopped from denying the validity of its issued receipt. This may be a correct statement of the law but it is not an issue in this action. The Government's proofs in this respect were admitted in evidence, and the charge to the jury contains no instruction with respect to estoppel; it cannot be presumed that such a theory was the basis of the jury's verdict when the possibility of estoppel was not submitted to it by the court.

An order consistent with this opinion may be presented for signature.