111 N.J. Super. 264 (1970)
268 A.2d 78
BANKERS NATIONAL LIFE INSURANCE COMPANY, A LIFE INSURANCE CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
RITA COOPER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 29, 1970.
*266 Mr. Roger H. McGlynn for plaintiff (Messrs. McGlynn, Stein & Eberiel, attorneys).
Mr. Jerome C. Eisenberg for defendant (Mr. William J. O'Shaughnessy on the brief; Messrs. Clapp & Eisenberg, attorneys).
MINTZ, J.S.C.
Bankers National Life Insurance Company (Bankers) instituted this action against Rita Cooper, the named beneficiary in an insurance policy issued by Bankers on the life of her deceased husband, Seymour Cooper (insured). Plaintiff seeks to rescind the policy alleging that it had lapsed for non-payment of a premium due April 5, 1967 and that in an application made on June 5, 1967 to reinstate the policy, the insured made a false representation that he had not been treated by a physician since the effective date of the policy. At the trial defendant conceded that the insured made a material misrepresentation in his application for reinstatement which would entitle plaintiff to rescind the policy. However, she contends that the premium due April 5, 1967 was paid on or about April 12, 1967 well within the 31 day grace period. Hence, she asserts the policy did not lapse for non-payment of a premium *267 and the reinstatement application is irrelevant. She counterclaims for the proceeds of the policy.
The policy in the amount of $50,000 was issued to Seymour Cooper on October 5, 1966 and provided for quarterly premiums of $344.10 payable on January 5, April 5, July 5 and October 5 of each year with a 31 day grace period. If any premium remained unpaid at the end of the grace period, the policy lapsed as of the due date. If a lapse occurred as the result of a default in a premium payment, the policy provided for reinstatement at any time within five years of the default upon receipt by Bankers of a satisfactory reinstatement application and upon the payment of all overdue premiums plus interest.
In conformity with the provisions of the policy, Bankers, contending that it had not received the April 5, 1967 premium payment, caused the policy to lapse. A lapse notice and a reinstatement application were forwarded to the insured after the expiration of the grace period. The lapse notice stated that to apply for reinstatement all questions on the reinstatement application must be answered. Said notice and application were sent to the insured c/o Windsor Cleaners, Inc. (Windsor) at its address in Newark, New Jersey. Windsor paid the insurance premiums for policies on the lives of three of its officers, Sara Brooks, President, Jack Brooks her son, Executive Vice President, and the insured, its former Executive Manager. The reinstatement application was returned to Bankers at its home office in Montclair, New Jersey accompanied by a check in payment of the premium drawn by Windsor and dated June 1, 1967 (but received by Bankers on May 31, 1967). There was also enclosed a handwritten note from the insured which stated:
"Please check your records as we did not get notice of premium due.
/s/ S. Cooper"
The reinstatement application was unacceptable to Bankers because the insured failed to specifically answer each *268 question but instead made the notation across its face, "No change since original application." A second application dated June 5, 1967 and signed by the insured was approved by Bankers and a letter dated June 7, 1967 was forwarded to him to the effect that the policy had been reinstated. In the reinstatement applications the insured acknowledges that the policy lapsed for non-payment of the premium due on April 5, 1967.
The policy includes the standard incontestability clause which provides that the policy shall be incontestable, except for the non-payment of premiums, after it has been in force during the insured's lifetime for a period of two years from its date of issue. The reinstatement application provides, however, that if after the policy lapses, it is reinstated, the incontestability provisions of the policy "shall run anew from the date of such reinstatement, but only with respect to the statements and answers contained in (the) application."
The insured died on November 4, 1968 within two years from the effective date of the reinstatement application. The cause of death was a malignant brain tumor. Thereafter, the defendant submitted proof of claim to the plaintiff. Having discovered that decedent made a material misrepresentation in his reinstatement application, plaintiff elected to rescind the policy and notified defendant of such election. However, if the policy did not lapse, the misrepresentation in the reinstatement application was irrelevant and the policy became incontestable on October 5, 1968.
Thus, the basic issue is whether the policy lapsed for non-payment of the premium due April 5, 1967. Defendant asserts that on April 12, 1967 a check representing the quarterly premium due April 5, 1967 was mailed by Windsor to Bankers at its home office. This check, she contends, was never presented for payment nor returned for non-delivery and was either lost in the mails or lost by plaintiff.
Plaintiff argues that the April 5, 1967 premium was not paid within the grace period and that the application *269 for reinstatement was necessary and concededly fraudulent. Plaintiff further alleges that even if the defendant proves the April 5, 1967 premium payment was mailed in due time, it never received said payment and the risk of loss in the mail is on the insured. The policy provides:
PAYMENT OF PREMIUMS  All premiums are payable on or before their due dates either to the Company at its Home Office or to an authorized representative of the Company, in exchange for a receipt signed by the President or Treasurer of the Company and duly countersigned.
Counsel for the plaintiff frankly indicated that it did not customarily remit a receipt for the payment as called for in the quoted provision.
The premiums on the policy insuring the life of the insured were to be paid by Windsor. All premium notices were sent to him c/o Windsor. The April 5, 1967 premium notice was received by Windsor and upon its face is a notation that it was paid by check No. 156 on April 12, 1967. Mr. Jack Brooks and Miss Lee Florer, Windsor's bookkeeper for many years, testified as to the ordinary business practices of Windsor regarding the payment of bills. On the 10th of each month Mr. Brooks reviewed the bills and approved same for payment. Bills approved by him were given to Miss Florer who drew the checks. They were written in order and automatically entered in the check register by the very process of being written. Thereafter, she gave the checks to Mr. Brooks who signed and returned them to her. Miss Florer sealed and stamped the envelopes after the checks were inserted therein and at the end of that business day, she deposited the mail at the post office near Windsor, traffic permitting, or in a mailbox near her home.
Since October 1966 Windsor has used the "Datamart" system of writing checks. As the check is written, it is entered on a carbon copy which acts as a check register and which indicates the payee, date, amount and number of the check without, however, the signatures reflected thereon. The *270 check register indicates check No. 156 was made payable to the order of Bankers on April 12, 1967. I am satisfied that said check for $344.10 was to pay the quarterly premium due April 5, 1967 on the insured's policy. Windsor's bank account for the month of April had substantial funds at all times to cover this check. Mr. Brooks testified that he specifically recalled signing check No. 156 and giving it to Miss Florer. She testified that if Mr. Brooks gave her the signed check on April 12, she mailed it on that date and referred to her handwritten notation on the premium notice that the premium was paid April 12, 1967 by check No. 156. On cross-examination she stated that she was not sure if Mr. Brooks returned the April 12, 1967 check to her for mailing. She further indicated that on occasion Mr. Brooks would retain checks for three or four days and then return them to her for mailing.
Bankers forwards an I.B.M. payment card and a return envelope with all premium notices. Windsor took advantage of forwarding its premium payments in that envelope to Bankers. Said envelope has a cellophane strip through which Bankers' address on the I.B.M. card is visible. In the upper left-hand corner of the envelope there is printed Bankers' name and address. Admittedly, check No. 156 was never presented for payment nor returned for non-delivery.
Windsor maintained an account in First National State Bank of New Jersey. The printed form of the check provided for two authorized signatures. The practice of cosigning checks during the period in question was not mentioned at the trial. Apparently, commencing July 1967 checks drawn on Windsor's account required only one signature, that of Sara Brooks or Jack Brooks. However, each of the seven checks introduced into evidence covering the decisive period April 10, 1967 through April 14, 1967 and numbering 151 through 158 inclusive (except check No. 156) contained two authorized signatures, that of Jack Brooks and either Seymour Cooper or Lee Florer. Six of the checks were co-signed by Mr. Brooks and Seymour *271 Cooper. The other check contains the authorized signatures of Jack Brooks and Lee Florer. Those checks were presented for payment and honored. Defendant thinks it significant that check No. 155 payable to First National State Bank and dated April 12, 1967 was presented for payment. The court is asked to infer that since check No. 155 was mailed, check No. 156 dated the same day must also have been mailed. Check No. 155 carries the co-signature of Seymour Cooper.
Mr. Brooks testified that payment was stopped on the crucial check No. 156 subsequent to the end of the grace period when notified that said premium payment was not received by Bankers. No written order was produced at the trial, although Mr. Brooks indicated it was available. See N.J.S.A. 12A:4-403(2). That outstanding check was voided by Windsor's accountant at the end of September or early October 1967.
Miss Eleanor Farrell, director of premium operations at Bankers during the period in question, testified that Bankers did not receive payment for the April 5 premium until the submission of the first reinstatement application on May 31, 1967. Miss Farrell examined the microfilm records of Bankers from April 12 to May 2, 1967. Such records show no premium payment by either Windsor or Seymour Cooper for those dates.
Miss Farrell demonstrated under cross-examination the method by which mail received by Bankers is processed. Bankers receives large quantities of mail each day which is picked up at the Montclair Post Office by two or three employees of Bankers and transported to Bankers' home office. The mail is brought to a cashier's cage where it is opened and sorted. Windsor's check and the I.B.M. payment card if received by Bankers would be placed in two separate piles. If either the check or card was thereafter lost, the other would be sufficient evidence of payment, but there was no record of a check dated April 12, 1967 or the alleged I.B.M. card having been received.
*272 An insured is not estopped where he had applied for reinstatement under the belief that a policy had lapsed, from showing that no lapse had actually occurred. Sun Life Assur. Co. of Canada v. Wiley, 258 Ky. 311, 79 S.W.2d 937 (Ct. of App. 1935). See also McNaughton v. Des Moines Life Ins. Co., 140 Wis. 214, 122 N.W. 764 (Sup. Ct. 1909); Security Mutual Life Insurance Co. v. Arenstein, 32 A.D.2d 899, 302 N.Y.S.2d 191 (Sup. Ct. App. Div. 1969); 3A Appleman, Insurance Law and Practice § 1861 (1967). But cf. Struhl v. Travelers Ins. Co., 255 App. Div. 527, 7 N.Y.S.2d 881 (Sup. Ct. App. Div. 1938), aff'd 281 N.Y. 584, 22 N.E.2d 162 (Ct. of App. 1939). While acquiescence or estoppel cannot be found from the conduct of the insured in submitting two reinstatement applications, his actual acknowledgment in those applications of a lapse of the policy for non-payment of the premium due on April 5, 1967 is a circumstance to be considered in determining whether or not the policy did in fact lapse.
As already observed, plaintiff contends that under the terms of the policy, payment is not effected until the premium is received at its home office and that the risk of its loss in the mails is on the insured. However, the premium notice forwarded to the insured provides that all remittances shall be made payable to the plaintiff and mailed to its home office in Montclair, New Jersey. The notice further provides that the check or draft shall not be considered payment unless and until the amount due is actually received by plaintiff.
The plaintiff authorized and requested the insured to remit the premium by mail. It forwarded envelopes and requested the insured to use them in mailing his premium payments. Once the insurer requests, authorizes or acquiesces in the use of the mails for remitting premiums, it adopts the postal authorities at its agent and assumes the responsibility for postal negligence. Therefore, the risk of loss of a duly mailed premium payment is on the plaintiff. Primeau v. National Life Ass'n, 77 Hun 418, 28 N.Y.S. 794 (Sup. *273 Ct. 1894), aff'd 144 N.Y. 716, 39 N.E. 858 (Ct. of App. 1895); Kenyon v. Knights Templar & M. Mutual Aid Ass'n, 122 N.Y. 247, 25 N.E. 299 (Ct. of App. 1890); Brown v. Pilot Life Ins. Co., 185 S.C. 334, 194 S.E. 121 (Sup. Ct. 1937); see also Colonial Life and Accident Insurance Co. v. Wilson, 246 F.2d 922, 927-928 (5th Cir.1957), certif. den. 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958); Minnick v. State Farm Mutual Automobile Ins. Co., 4 Storey 125, 54 Del. 125, 174 A.2d 706 (Super. Ct. 1961); 6 Couch on Insurance 2d § 31:105, § 31:106, and § 31:107 (1961); 14 Appleman, Insurance Law and Practice § 7990 (1944); cf. Struhl v. Travelers Ins. Co., supra, 7 N.Y.S.2d at p. 884. Of course, if a premium payment is lost in the mails, an insured is not discharged from making good the loss, but he is, however, protected against a forfeiture. Brown v. Pilot Life Ins. Co., supra.
Payment of the premiums on a life insurance policy is a condition precedent to keeping the policy in force and must be proven by the claimant before recovery can be had. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 95 n. 3 (1968); Ruggiro v. Prudential Ins. Co., 113 N.J.L. 561, 563-564 (Sup. Ct. 1934); Moyna v. Prudential Life Ins. Co., 96 N.J. Eq. 293, 296-297 (E. & A. 1924); see also Brown v. New York Life Ins. Co., 59 F. Supp. 721, 724 (D. Ct. N.J. 1943), aff'd 148 F.2d 524 (3d Cir.1945). But cf. 44 Am. Jur.2d Insurance § 1957, pp. 895-896 (1969); contra: Ping v. Unitd States, 105 F. Supp. 843, 846 (E.D. Mich. 1952). In the final analysis the issue is whether or not the defendant has sustained her burden of proof that the premium payment due April 5, 1967 was timely and properly mailed to the insurer. Said burden is not sustained unless the evidence demonstrates the offered hypothesis as a rational inference. Mere guess or conjecture cannot be substituted for legal proof. Joseph v. Passaic Hospital Ass'n, 26 N.J. 557, 575 (1958).
Of course no reason was suggested why the check in question having been drawn should not in the ordinary *274 course of events have been signed and duly mailed to Bankers. However, the following weaknesses are apparent with respect to defendant's claim. In the first instance, there is the testimony of Bankers' witness that it has no record of having received the April 12, 1967 check or the alleged accompanying I.B.M. card, which in effect constitutes a denial of receipt. Mr. Brooks is an experienced businessman, and presumably so was the insured. When Mr. Brooks was apprised that the policy had lapsed for non-payment of the April 5 premium, he made no inquiry of Miss Florer with respect to that particular payment even though he specifically remembers giving check No. 156 accompanied by the I.B.M. card and the Bankers' envelope to her for mailing. I question his specific recollection of these routine details. Likewise the insured made no inquiry of Miss Florer with respect to check No. 156. There was no testimony presented as to who, if anyone, co-signed that check. The evidence at best simply indicates that only Mr. Brooks signed it at a time when two signatures apparently were required.
More importantly, the insured did not at any time protest the lapse of his policy and did not, as any reasonable businessman would, inform Bankers of the payment of the premium by Windsor's check dated April 12, 1967 if that was the fact. Instead, he submitted two reinstatement applications in which he made material misrepresentations, and in each of which he acknowledged that the policy lapsed for non-payment of the April 5, 1967 premium. With the first reinstatement application he enclosed his false handwritten note that the premium notice had not been received. All these factors cast doubt as to whether check No. 156 dated April 12, 1967 was in fact signed and duly mailed to Bankers.
The observation of the court in Szczesny v. Vasquez, 71 N.J. Super. 347, 356-357 (App. Div. 1962) is apposite to the instant situation. The court there indicated that the writing of a letter coupled with evidence of an office custom with reference to the mailing of letters was not under *275 the circumstances there presented sufficient to constitute proof of mailing. So in the instant situation, the drawing of a check coupled with evidence of relevant office practice, does not under the circumstances here presented constitute proof of mailing. Perhaps the pertinent check was never in fact duly signed or if so signed, misplaced in Windsor's office or lost by Miss Florer. The check may have gone astray in the mails or it is conceivable that the insurer may have received the check and misplaced or lost the same. But it is sheer speculation under the posture of the proofs to make any determination based upon a preponderance of the evidence as to whether or not the premium payment due April 5, 1967 was timely and properly mailed to Bankers. Proofs which give equal support to each of two inconsistent inferences are insufficient. Cvelich v. Erie Railroad Co., 120 N.J.L. 414 (Sup. Ct. 1938), aff'd 122 N.J.L. 26 (E. & A. 1938), certif. den. 307 U.S. 633, 59 S.Ct. 1033, 83 L.Ed. 1516 (1939). Defendant simply has failed to sustain her burden of proof.
Accordingly, there will be a judgment for rescission of the policy in question and plaintiff will in connection with said relief be obliged to pay to defendant the sum of $2,408.70 representing a return of premiums paid on said policy. Judgment for plaintiff on the counterclaim.
Submit form of judgment in accordance with R. 4:42-1.