893 F.2d 782
 ESTATE OF Thomas William BEINHAUER, Plaintiff-Appellant,
v.
AETNA CASUALTY AND SURETY COMPANY, A Connecticut
Corporation, et al., Defendants,
Nationwide Mutual Insurance Company, An Ohio Corporation,
Defendant-Appellee.
 No. 89-4489.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 7, 1990.
 
 Ben F. Galloway, Owen, Galloway & Clark, Gulfport, Miss., for plaintiff-appellant.
 Floyd G. Hewitt, Jr., Compton, Crowell & Hewitt, Biloxi, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before CLARK, Chief Judge, POLITZ and WILLIAMS, Circuit Judges.
 CLARK, Chief Judge:
 
 I.
 
 1
 The Estate of Thomas W. Beinhauer (the Estate) appeals the district court's grant of summary judgment in favor of Nationwide Mutual Insurance Company (Nationwide) in this declaratory judgment action seeking to establish coverage under an automobile insurance policy. Because genuine issues of material fact render summary judgment inappropriate, we reverse and remand.
 
 II.
 
 2
 Harold Beinhauer (Beinhauer) was insured under a Nationwide automobile insurance policy which provided for semi-annual premiums payable in two installments each. The policy required Nationwide to give Beinhauer notice if it elected not to renew the policy at the end of any semi-annual term, unless he had failed to pay a premium when due or Nationwide had already notified him of its willingness to renew. The policy also limited Nationwide's right to cancel to two circumstances: (1) failure of the policyholder to discharge his obligation to pay premiums when due, or (2) suspension or revocation of the driver's license of the policyholder or an operator of the insured vehicle.
 
 
 3
 In compliance with the provisions of the policy, Nationwide sent Beinhauer a billing and renewal notice in June of 1987 which required an initial installment payment of $60.35 by July 2, 1987 to continue coverage for the July to January 1988 policy period. Mrs. Harold Beinhauer testified she mailed a check in this amount to Nationwide in sufficient time to arrive before the due date. Nationwide offered proof that it never received the check and established that the check was never processed or paid by the Beinhauers' bank.
 
 
 4
 Nationwide asserted it sent a second notice on July 7, 1987 informing Beinhauer that the initial premium installment was past due and that his coverage would expire effective July 2 unless this installment was paid by July 17. Beinhauer denies receiving this second notice. Nationwide did not send a billing notice for the succeeding July to January 1988 installment that was to come due in September of 1987 or a billing notice for any installment applicable to the January to June 1988 policy period. Beinhauer never paid or tendered any amount to cover these installments.
 
 
 5
 On March 9, 1988, the insured's son, Thomas W. Beinhauer, was killed in an automobile accident with an uninsured motorist. Beinhauer filed a claim based on the uninsured motorist coverage contained in the policy. Nationwide rejected the claim asserting that Beinhauer's policy was no longer in force because he failed to pay the renewal premium. The Beinhauers testified that when they visited the office of Nationwide's local agent, Ms. Janet Lee (Lee), she told them that the policy had been "cancelled" for nonpayment of premiums.
 
 
 6
 The Estate of the deceased brought this declaratory judgment action. The district court granted Nationwide's motion for summary judgment, concluding that the policy had lapsed before the accident. The court reasoned that Beinhauer failed to fulfill a precondition to his insurance contract by not paying the initial installment of the renewal premium and that Nationwide was not required to give any further notice to Beinhauer that his failure to pay the premium had terminated coverage.
 
 
 7
 In this appeal the Estate contends that cancellation, rather than nonrenewal, was the proper method under Mississippi law and the terms of the policy for Nationwide to follow to terminate coverage and that Nationwide never sent the notice required to effect cancellation. The Estate argues alternatively that the mailing of the July installment constituted a renewal of the policy. Because genuine issues of material fact are raised by the asserted mailing of the July installment, we reverse.
 
 III.
 
 8
 Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are material. Id.
 
 
 9
 The legal distinction between cancellation and nonrenewal of an insurance contract is significant because the Mississippi automobile insurance code (the code) provides different procedural requirements for each. See generally id. Secs. 83-11-1 to 83-11-21. Under the code and the terms of Beinhauer's policy, nonpayment of a premium is a valid reason for cancelling the policy. Id. Sec. 83-11-3(1)(a). When the insurer's reason for cancelling a policy is nonpayment of a premium, the code requires the insurer to give the insured at least ten days' notice before cancellation. Id. Sec. 83-11-5 (1972).
 
 
 10
 A nonrenewal may occur, according to the code and the Beinhauer policy, either when the insurer declines to offer continued coverage at the close of the policy period or when the insured declines to accept the offer of continued coverage. See MISS.CODE ANN. Sec. 83-11-1(e) (1972). When the insurer elects not to renew a policy, section 83-11-7 of the code requires the insurer to give the insured thirty days' advance notice of its intention not to renew. However, section 83-11-7 states:
 
 This section shall not apply:
 
 11
 (a) if the insurer has manifested its willingness to renew, subject to certain specified conditions which are not met by the insured; nor
 
 
 12
 * * *
 
 
 13
 (c) in case of nonpayment of premium; ...
 
 
 14
 The Estate contends that the Nationwide policy and section 83-11-3 of the code contemplate cancellation rather than nonrenewal for nonpayment of a premium and that Nationwide's local agent told the Beinhauers the policy had been "cancelled" for nonpayment. The Estate also argues that section 83-11-7 forecloses the possibility of electing nonrenewal in the case of nonpayment of a premium. We disagree.
 
 
 15
 The Nationwide policy evinces the company's willingness to renew by making nonpayment of a premium or loss of a driver's license the only grounds for cancellation. The policy also expressly preserves the company's right to elect not to renew the policy for nonpayment of a premium. Section 13(a) of the policy states that coverage will not be renewed if the insured "has failed to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof...." The informal comments of Nationwide's local agent did not override Nationwide's express policy right to treat nonpayment as a nonrenewal.
 
 
 16
 The Estate's argument that the code required Nationwide to proceed by cancellation is foreclosed by the Mississippi Supreme Court's decision in Willis v. Mississippi Farm Bureau Mutual Insurance Company, 481 So.2d 256 (Miss.1985). In Willis, the plaintiff was insured by the defendant under an automobile insurance policy which required the advance payment of a renewal premium to continue coverage. The defendant insurance company sent the plaintiff a premium-due notice which stated that payment had to be remitted in order for coverage to continue. The plaintiff failed to pay the renewal premium and subsequently was involved in an accident. When the insurance company declined to pay the claim because the plaintiff had failed to remit the renewal premium, the plaintiff brought suit. The trial judge granted summary judgment for the insurance company. Id. at 256-57.
 
 
 17
 On appeal, Willis argued that the insurance company "was required to send him an express notice of cancellation before his coverage could be terminated." Id. at 258. The Mississippi Supreme Court, construing sections 83-11-5 and 83-11-7 of the insurance code, disagreed and determined that no notice was required beyond the premium-due notice already sent to Willis. The court reasoned that payment of the premium was "a condition precedent to renewal of the policy" and that no additional notice was required by section 83-11-7 because the insurance company had manifested its "willingness to renew, subject to the payment of the premium owed" by sending the premium due notice. Willis, 481 So.2d at 259.
 
 
 18
 Willis applies to this case. Section 13 of the Nationwide policy, entitled "Renewal," states that "this policy shall terminate on [the] expiration date, if ... the Policyholder has failed to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof...." The district court properly concluded that, as in Willis, the payment of the renewal premium was a condition precedent to continuation of coverage under the policy. The district court also correctly concluded that Nationwide was not required by the Mississippi insurance code to send any more detailed notice than the billing and renewal statement received by Beinhauer. This notice reconfirmed Nationwide's willingness to renew the policy, subject to payment of the premium owed, and neither section 83-11-7 nor the terms of the policy required further notice. Willis, 481 So.2d at 259. Nationwide was not required to send Beinhauer a notice of cancellation to terminate coverage under the policy for nonpayment of a renewal premium.
 
 
 19
 The Estate argues alternatively that Mrs. Beinhauer's mailing of the July premium installment renewed the policy by operation of the Mississippi postal acceptance rule. Nationwide responds that the postal acceptance rule establishes only the date and not the fact of payment and maintains that it never received the payment. Both parties rely on Mississippi Insurance Underwriting Association v. Maenza, 413 So.2d 1384 (Miss.1982), and Stonewall Life Insurance Company v. Cooke, 165 Miss. 619, 144 So. 217 (1932) to support their respective positions.
 
 
 20
 In Maenza and Stonewall, the Mississippi Supreme Court stated that coverage under an insurance policy does not lapse if the payment is mailed in time to reach the insurer before the due date, even though the payment is not in fact received by the insurer until after the due date. Maenza, 413 So.2d at 1388; Stonewall, 144 So. at 224. These cases do not establish that the mere mailing of a premium constitutes renewal of the policy, because in each case the payment was actually received by the insurance company. Maenza, 413 So.2d at 1385; Stonewall, 144 So. at 224. Nor do they establish that actual receipt of the payment by the insurance company is necessary to effect a renewal of the policy for the succeeding term. Neither case involved a lost premium payment, as in the present case. The language in these cases is also susceptible of a broader application than that suggested by Nationwide. See Maenza, 413 So.2d at 1388; Stonewall, 144 So. at 224. Therefore, neither Maenza nor Stonewall settles the issue here.
 
 
 21
 The legal effect of mailing an insurance premium is a contractual matter controlled by the intent of the parties. When an insurer has invited or acquiesced in payment by mail, and the policy does not otherwise define the term "payment," the insured is protected against forfeiture of coverage by mailing the required premium in time to reach the insurer by the due date. See, Colonial Life & Accident Ins. Co. v. Wilson, 246 F.2d 922, 927 n. 10 (5th Cir.1957), cert. denied, 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958); Agee v. Citizens Nat'l Bank, 93 N.C.App. 537, 378 S.E.2d 566, 570 (1989); Banker's Nat'l Life Ins. Co. v. Cooper, 111 N.J.Super. 264, 268 A.2d 78, 82 (Ch.Div.1970). Of course, this does not mean "that if the money is lost in the mail ... the insured is discharged from making good the loss on notice, but simply that it is so far a payment that it prevents a forfeiture." Hollowell v. Life Ins. Co. of Va., 126 N.C. 398, 35 S.E. 616, 617 (1900) (citations omitted) (emphasis added); see also Agee, 378 S.E.2d at 570; Cooper, 268 A.2d at 82.
 
 
 22
 With these principles in mind, we conclude that Mrs. Beinhauer's testimony that she mailed a check for the July installment raises genuine issues of material fact which preclude summary judgment on this record. Such issues include whether Mrs. Beinhauer duly mailed the premium payment and whether Beinhauer knew or should have known that Nationwide had not received the payment so mailed.
 
 
 23
 Nationwide's billing and renewal notice invited payment by mail by stating that premium checks should be made payable to Nationwide at P.O. Box 1000-Dept. 172, Memphis, TN 38101. The notice also contained a return envelope. The policy nowhere defines the term "payment" as receipt of the premium by Nationwide. Mrs. Beinhauer's testimony that she mailed the premium check therefore creates an issue of material fact because a proper mailing of the check would legally protect Beinhauer against immediate forfeiture of coverage. This issue is also subject to genuine dispute because Nationwide's proof that it never received the check and that the check was never processed or paid by the Beinhauers' bank would support a reasonable inference that the check was not duly mailed.
 
 
 24
 If, upon further development, the proof establishes that Mrs. Beinhauer duly mailed the check, the Estate would not necessarily be entitled to a declaratory judgment that coverage existed as a matter of law. An insured cannot mail one periodic premium installment which the insurance company never receives and thereby create coverage in perpetuity. At some point a reasonable insured must realize that the premium check has not been paid by his bank or that a future installment has become due and has not been paid. The insurer may also give notice to the insured that the installment premium has not been received. Nationwide claims such notice was given here.
 
 
 25
 If prior to the March 9, 1988 accident Beinhauer knew or should have known that Nationwide had not received his July 1987 premium installment, and he thereafter failed to tender the installment or installments due prior to the accident, Beinhauer would have no claim to the benefits of a renewed policy. The policy states: "this policy shall terminate on [the] expiration date, if ... the Policyholder has failed to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof...." (Emphasis added). One of those obligations is to "[make] good the loss on notice," when a premium payment has been lost in the mail. Hollowell, 35 S.E. at 617; see also Agee, 378 S.E.2d at 570; Cooper, 268 A.2d at 82.
 
 
 26
 Nationwide's mailing of a premium overdue notice on July 7, 1987 may be sufficient proof of notice to Beinhauer that the July 1987 installment had not been received. The policy twice equates notice to an insured by the company with the mailing of a notice to the policyholder's last known address. The code contains similar language. See MISS.CODE ANN. Sec. 83-11-9 (proof of mailing of notice of cancellation or intent not to renew at the address listed in the policy constitutes sufficient proof of notice). If Beinhauer had actual or constructive notice that his payment had not been received, Mrs. Beinhauer's initial mailing of a premium check would be immaterial, and Nationwide would be entitled to judgment.
 
 
 27
 On remand, the district court is directed to determine whether Mrs. Beinhauer duly mailed the check to Nationwide and, if so, whether Beinhauer had actual or constructive notice or should have known that Nationwide had not received his July premium payment. The legal effect of Beinhauer's failure to pay the installment which would have come due in September of 1987 or any part of the January to June 1988 semi-annual premium will also have to be determined if these issues are resolved in the Estate's favor. If the district court chooses to accord the parties time to make additional proof and it is still insufficient to support summary judgment, the disputed issues of material fact which remain must be tried.
 
 IV.
 
 28
 The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.
 
 
 29
 REVERSED and REMANDED.