413 So.2d 1384 (1982)
MISSISSIPPI INSURANCE UNDERWRITING ASSOCIATION
v.
Peter J. MAENZA and Mississippi Insurance Commission.
No. 53199.
Supreme Court of Mississippi.
May 12, 1982.
*1385 Watkins & Eager, P.N. Harkins, III, Jackson, for appellant.
Michael B. Martz, Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and DARDEN, JJ.
BROOM, Justice, for the Court:
Insurance premium payments (renewal of existing policies) mailed two days before expiration of the existing coverage but not received until the day after coverage allegedly expired are background to this property insurance litigation. Mississippi Insurance Underwriting Association (MIUA herein) had written the insurance coverage.[1] The Circuit Court of the First Judicial District of Hinds County upheld the decision of the Mississippi Insurance Commission awarding coverage to the policyholder, Peter J. Maenza. We affirm.
Since 1976, the plaintiff/appellee Maenza had coverage with MIUA on his Biloxi property which received damage from Hurricane Frederic on September 11, 1979. On the premise that Maenza's coverage lapsed because his premium payment was received one day late rather than on or before the September 10, 1979, due date, MIUA rejected his claim. When MIUA received the premium payment on September 11, 1979, the hurricane was in the area and MIUA determined that the coverage could not be made effective "until the hurricane had cleared the gulf." After MIUA denied coverage, its appeals committee upheld the denial and Maenza appealed to the Mississippi Insurance Commission. Miss. Code Ann. § 83-35-21 (1972). In reversing the appeals committee's denial of coverage, the Commission directed MIUA to issue the desired coverage effective on the anniversary date of the policy: September 10, 1979. MIUA then appealed to the circuit court where coverage was upheld, and now MIUA appeals here.
Thomas J. Silman of Biloxi, the producing agent for Maenza, testified that he mailed the renewal applications to MIUA from the Biloxi post office on September 8, 1979. Undisputedly, the renewals were not received at the Jackson MIUA office until September 11. MIUA elected to treat the documents as applications for new coverage rather than as renewals of existing policies. On September 20, MIUA sent Silman a letter informing him that the applications could not be processed because Hurricane Frederic had been designated a hurricane as of 5:00 p.m., September 10. According to Rule III, 3(b)(5) of the MIUA Manual of Rules and Procedures, no application for new or increased coverage will be accepted when a designated hurricane is in the Gulf of Mexico. After the hurricane threat passed, five new MIUA policies were issued to Maenza with a September 14, 1979, effective date.
*1386 G.O. Leird, MIUA's office supervisor responsible for office procedures, testified that the documents were treated as applications for new coverage because they were received on September 11 after expiration of the policy one day earlier. Leird said that when the one-year MIUA contracts expire with no notice of renewal, MIUA assumes the business has been placed in the voluntary market because MIUA loses "quite a bit of business" each year to that market. However, Leird's further testimony was that he knew of no reason why Maenza's policies would not have been renewed upon receipt of the applications and premium payments other than the fact that they were received when the hurricane was in the Gulf and were received one day after the stated expiration date. When specifically asked by a commissioner whether MIUA would have rewritten the policies on the Maenza property, Leird replied, "I think we would have, yes ... [h]ad it been on time, we would have."
Thus arises the issue: is renewal of insurance effective when application and payment are mailed by the insured, or does it become effective when received by MIUA? The Insurance Commission ruled that the renewal became effective when the application and premium payment were deposited in the mails in time to reach MIUA prior to the stated expiration date. This conclusion was reached by the Commission after laying the blame for the confusion in the case "at the door of the United States Postal Authorities." According to the Commission, the renewal applications would have been received by MIUA on time had the postal service not delayed in handling the letters. Further ruling of the Commission was that as between the parties, the insurer (MIUA) should bear the imputed responsibility for the postal service's negligence and delay because MIUA invited, requested, authorized and acquiesced in the use of the mails for transporting all correspondence, applications, premium payments, notices, policies, etc., and thus adopted the postal service as its agent. Appellant MIUA urges reversal of the Commission's decision on two grounds. First, it argues that agent Silman (Maenza's representative) made the offer to contract and, as the offeror, Maenza should bear the consequences of any delay on the part of the post office.
Significant and applicable here is Mississippi Code Annotated § 83-35-15(2) (1972), which states in part, "[a]ny policy issued pursuant to the provisions of this section shall be renewed annually, upon application therefor, so long as the property meets the definition of `insurable property' set forth in section 83-35-3(d)." (emphasis added). From the plain language of this statute, we find the legislature envisioned that automatic renewals would occur when applications were made therefor. This apparently was MIUA's policy because, according to Leird, had Maenza's application been delivered on time and the hurricane not been in the Gulf, the policies would have been automatically renewed. Such automatic renewals show that the offer for renewal is made by MIUA when it sends its notice of expiration, and is accepted by the offeree/insured when he sends in his premium payments to be automatically renewed. Thus MIUA's first argument lacks merit.
MIUA's second argument is that its rules require actual receipt of the premium before coverage can be effected. It cites 14 J. Appleman, Insurance Law and Practice, § 7990 (1944), which states in part that "[t]he effect of mailing a premium, as regards payment, depends wholly upon the intention of the parties... . [G]enerally payment of a premium would not be effected until actual receipt by the insurer... ." Appellant MIUA contends that Mississippi Code Annotated § 83-35-15(2) (1972) and the MIUA Manual show an intention by the Association not to be bound until receipt of a premium. The portion of § 83-35-15(2) relied upon by MIUA states, "If the association determines that the property is insurable and that there is no unpaid premium due from the applicant for prior insurance on the property, the association, upon receipt *1387 of the premium or such portion thereof as is prescribed in the plan of operation, shall cause to be issued a policy of essential property insurance for a term of one (1) year." We note that MIUA does not quote the remainder of the subsection, which states,
[a]ny policy issued pursuant to the provisions of this section shall be renewed annually, upon application therefor, so long as the property meets the definition of "insurable property" set forth in section 83-35-3(d)." (emphasis added).
Clearly the portion of the subsection cited by MIUA refers to new coverage, whereas the second sentence in the subsection refers to renewals. Language in the second sentence is that renewals are effected "upon application therefor." Nowhere is it stated in any statute that renewals are effective only when received. Inasmuch as we are dealing with renewals in the instant case, our opinion is that the portion of § 83-35-15 cited by MIUA is not controlling.
Likewise, MIUA quotes from Rule II(9) of the MIUA Manual of Rules and Procedure that "[p]ayment must be received by the Association before coverage can become effective." Again, this rule is quoted from a section concerning premiums. The MIUA Manual at Rule III, (1)(e) states the following concerning renewals, "A renewal application on form prescribed by the Association must be submitted." Language in the renewal section speaks of renewals being effective when "submitted." Nowhere in the section are the words "effective when received" used. MIUA contends that a further showing of intention not to be bound until premium payment is received is the language on the Notice of Expiration stating, "THE RENEWAL APPLICATION MUST BE RETURNED TO THE ASSOCIATION AT LEAST FORTY-FIVE (45) DAYS BEFORE EXPIRATION DATE SHOWN IN ORDER TO PROVIDE THE NECESSARY TIME TO PROCESS YOUR REQUEST AND PREVENT LAPSE IN COVERAGE," and the language on the application for renewal which states, "THIS IS NOT A BINDER. NO INSURANCE HAS BEEN PLACED." This Court notes that neither of the quoted passages states with clarity that coverage will not be effective until payment is received.
The appellee Commission urges this Court to apply the so-called postal acceptance rule, which states that where the mail is the method of transmission between the insurer and the insured, a policy will not be forfeited by failure of a remittance mailed in apt time to reach the company on or before the date when the premium falls due. 14 J. Appleman, Insurance Law and Practice, § 7990 (1944). The rule is explained by Appleman thusly:
Where the insurer invites the insured to forward a premium through the mails, the government becomes the agent of the insurer for the purpose of transmitting the premiums, but, in the absence of other circumstances, it will be presumed that the insurer intended that the premium should be mailed in time to reach the office in due course on or before the day the premium is to fall due. If the funds are mailed in apt time to reach the company on or before the premium falls due, it will constitute payment. Under those circumstances, if the premium was mailed in due time, the insurer could not forfeit the contract merely because the remittance was delayed, and did not actually arrive until after the due date. And where a previous custom of acceptance is shown, the insurer may be concluded thereby.
Thus, where the mail had been the method of transmission between the life insurance company and a policyholder, the policy was not forfeited because of the failure of a remittance mailed in apt time to reach the company until past due. This follows also where the insurer has requested, authorized, or acquiesced in the sending of premiums by mail. Id.

The postal acceptance rule is well established and has been applied in many jurisdictions *1388 in situations similar to those in the instant case. Although upon different facts, in Stonewall Life Insurance Co. v. Cooke, 165 Miss. 619, 114 So. 217 (1932) we adopted the rule, and stated that where it is the practice and custom of the insurance company to accept premium payments by mail, the deposit of a check in the mail in time to reach the insurance company will avoid a forfeiture even though the check does not reach the company until afterwards. The Commission correctly points out that many factors show MIUA's practice and custom was to invite insureds to forward premiums through the mails. First, Rule II(9) of the MIUA Manual states in part that "[p]ayment may be made in person or by mail." (emphasis added). Also, MIUA official Leird said that the most common means of transmitting applications, premiums and reports to the Jackson office was by the mails. In this regard, MIUA itself utilized the mails to deliver its notices of expiration and placed upon the face of the notice a statement of mailing: "STATEMENT OF MAILING; I certify that the original of this notice, addressed as above to the insured, and a duplicate, addressed to the agent, were today deposited in the United States mail, first class postage prepaid." It could hardly be expected that MIUA insureds would not utilize the mails to send premiums since MIUA's office is in Jackson and the only insureds covered by the statutory program are approximately 130-165 miles away on the coast.
At oral argument, MIUA relied upon our opinion recently handed down in Pasco Enterprises, Inc. v. Southland Insurance Agency, Inc., 408 So.2d 63 (Miss. 1981). Pasco is not controlling because of its distinguishing features which contrast with the instant case. Pasco involved the party to whom payments could be made in order to reinstate insurance coverage whereas the instant case involves the mode of payment to renew coverage. In Pasco the question was whether payment of premiums to the local agent to reinstate a policy after the policy had expired will bind the insurance company when the local agent does not forward the payment. Here the issue is whether the deposit in the mail of a premium prior to the expiration date of the policy will be effective to renew the policy when the premium arrives at the insurance company's office after the expiration date of the policy. Pasco dealt with an insured, a local agent, and an insurance company, whereas the instant case deals with an insured and a statutorily created agency. In Pasco Justice Hawkins noted that the local agent had not received any payments from the insureds before the policies had terminated, but here the policies had not terminated before payment was placed in the mail to renew the policies. In the instant case, MIUA accepted the payment forwarded through the mails and made no attempt to refund. Instead MIUA caused the coverage to have a gap of time during which Maenza's property was damaged by Hurricane Frederic.
The context of the MIUA program, with MIUA's main office in Jackson and its only policyholders on the coast, shows that MIUA intended the mails be used for transmitting premiums. It is unreasonable to assume that most policyholders would hand deliver their premiums by driving the distance from the coast to Jackson. Thus, inasmuch as MIUA adopted the postal service as its agent and Silman (Maenza's insurance agent) mailed the applications two days before the due date, in apt time to reach MIUA's office, the failure of the applications to reach MIUA until one day past due will not defeat coverage.
Two rules of construction indicate that we should uphold the Commission's decision. First, statutes designed to regulate the insurance business should be liberally construed in furtherance of the purpose to be served, and thereby prevent or correct evils growing out of the conduct of such business. 44 C.J.S. Insurance § 60 (1945). The legislature created MIUA for the specific purpose of making insurance available *1389 to coastal residents who could not obtain insurance on the open market. MIUA's insureds are rightly entitled to have MIUA rules liberally interpreted in their favor because MIUA is remedial in nature. Secondly, is the general rule in appeals from administrative agencies that this Court must uphold the decisions of the insurance commission absent a showing of capricious and arbitrary action. See e.g. Mississippi Insurance Commission v. Mississippi State Rating Bureau, 220 So.2d 328 (Miss. 1969). We find that the Commission's action was shown to be neither capricious nor arbitrary. After considering all of the factors above discussed, our opinion is that the circuit court's upholding the Insurance Commission decision was without reversible error. Therefore, affirmance must be ordered here.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and DARDEN, JJ., concur.
NOTES
[1] MIUA is a creature of the Mississippi Legislature formed in 1970 to provide property insurance coverage not otherwise available to residents of the Mississippi Gulf Coast. Miss. Code Ann. § 83-35-1 et seq. (1972).