809 So.2d 713 (2001)
MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY, Appellant,
v.
William R. CARVER, Appellee.
No. 2000-CC-01247-COA.
Court of Appeals of Mississippi.
October 9, 2001.
Rehearing Denied December 4, 2001.
Certiorari Denied March 7, 2002.
*714 James W. Younger, Jr., Jackson, Attorney for Appellant.
Lindsey C. Meador, Cleveland, Attorney for Appellee.
EN BANC.
McMILLIN, C.J., For the Court:
¶ 1. This matter originated as a disciplinary action by the Mississippi Department of Public Safety against its employee, William R. Carver. Carver, finding himself dissatisfied, not with the fact of, but rather with the severity of his discipline, appealed the matter to the Mississippi Employee Appeals Board as permitted by statute. The Board reduced the sanctions imposed against Carver by the Department. Having now become the aggrieved party, the Department sought and was granted a writ of certiorari by the Circuit Court of Hinds County so that the matter could be subjected to judicial review. The circuit court affirmed the decision of the Appeals Board and the Department perfected its appeal to this Court. We reverse and render the decision of the circuit court, an action that has the effect of reinstating the original disciplinary penalties imposed by Carver's employing agency. We do so on the basis that we find the decision of the Appeals Board to be unsupported by any recognizable principle of law and, thus, to be an arbitrary and capricious substitution of its own assessment of an appropriate sanction for that of the employing agency.

I.

Facts
¶ 2. Carver, a state trooper with the Mississippi Highway Safety Patrol, became involved in certain criminal violations regarding the taking and possession of wildlife in the State of Idaho. These incidents occurred in the years 1992 and 1996. The 1996 incident led to Carver's arrest in Idaho and the institution of criminal proceedings. Some time later, Carver was notified by federal authorities of their intention to charge him under federal laws relating to transportation of illegally-obtained wildlife across state lines based on the 1992 incident.
¶ 3. By an instrument dated January 21, 1998, the Mississippi Department of Public Safety, as Carver's employer, instituted a disciplinary proceeding against Carver, charging that the activities outlined above constituted violations of the department's general order regarding officer conduct. Carver, on that same date, executed a waiver of his right to a departmental hearing in the following form:
I, William R. Carver, do hereby acknowledge, without any coercion, threats and not being under duress, voluntarily waive the benefit of a hearing which will be proved [sic] me and will accept any penalty assessed by the Director, MHSP.
I understand that I am not waiving any of my appeal rights, but only waiving *715 a hearing before the Performance Review Board.
¶ 4. By Special Order 98-010 dated January 21, 1998, Carver was notified in writing by Colonel Thomas C. Ward, Director of the Mississippi Highway Safety Patrol, that the offenses constituted proper ground for disciplinary action, and that Carver was being demoted from DPS Assistant Inspector/Master Sergeant to DPS Highway Patrol Officer Senior/Sergeant. This action had the effect, among other things, of reducing Carver's monthly salary approximately $300 per month.
¶ 5. Apparently dissatisfied with the severity of the discipline imposed, Carver appealed the decision to the Employee Appeals Board. The matter was heard in a de novo proceeding by a hearing officer. The hearing officer revoked Carver's demotion and, instead, substituted a ten-day suspension without pay as the sole penalty for Carver's admitted activities. The full board considered the matter and summarily affirmed the hearing officer's decision. As we have already observed, the circuit court, upon review by writ of certiorari, affirmed the decision of the Employee Appeals Board.

II.

Discussion
¶ 6. Although Carver advanced a number of reasons as to why his discipline was inappropriate, he does not contest the fact that he was involved in two separate incidents involving violations of Idaho and federal law regarding the harvesting and possession of wild game. One of the reasons advanced by Carver for his dissatisfaction with the discipline imposed was his assertion that, at some time prior to Director Ward's appointment to his post, Ward's predecessor in office had unofficially let it be known in response to Carver's inquiry that, if Carver would plead guilty to the Idaho game violation, a ten-day suspension would be an appropriate internal discipline.
¶ 7. The sole reason offered by the Appeals Board Hearing Officer to revoke Carver's demotion was his determination that "I find as fact that the Director ... gave his word to [Carver] that the incident would only result in a ten (10) day suspension without pay, and that the Appealing Party acted in reliance upon this assurance." It is as to the sufficiency of this finding to support the modification of Carver's discipline that we must, therefore, give our attention. In doing so, we do not mean to overlook substantial evidence appearing in the record in the form of testimony from Carver's fellow employees as to the exemplary manner in which he performs his duties as a state trooper. We simply face the fact that our review is limited to a search for errors of law in the conduct of the proceedings. The impact of Carver's apparently satisfactory performance of his duties for many years was a matter that should have, and insofar as we know, did in fact, affect the employing agency's determination of the appropriate level of discipline for Carver's admitted transgressions.
¶ 8. The authority of an employing state agency such as the Mississippi Department of Public Safety to impose discipline on its employees is not to be contested. It arises of necessity in the give-and-take that is an integral part of the employer-employee relationship. Nevertheless, the procedures by which such discipline may be imposed have been formalized to a large extent, principally by the adoption by the Mississippi Legislature of a state-wide personnel administration system to be overseen by the State Personnel Board. Miss.Code Ann. §§ 25-9-101 to -155 (Rev. 1999). Among other things, the relevant *716 laws provide that "[n]o employee ... may be ... adversely affected as to compensation or employment status except for inefficiency or other good cause, and after written notice and hearing within the department. ..." Miss.Code Ann. § 25-9-127(1) (Rev.1999).
¶ 9. It was the hearing contemplated by Section 25-9-127(1) of the Mississippi Code that Carver waived in January 1998, thereby admitting the facts of the allegations against him and consenting to receive such discipline as the Director should conclude was appropriate. Carver's waiver preserved his right to appeal the discipline to the Employee Appeals Board, but it must be remembered that the scope of inquiry in such an appeal is narrowly limited. The disciplined employee, in order to obtain relief before the Appeals Board, must either "furnish evidence that the reasons stated in the notice of ... action adversely affecting his compensation or employment status are not true or are not sufficient grounds for the action taken...." Miss.Code Ann. § 25-9-127(1) (Rev.1999).
¶ 10. Although the proceeding before the Appeals Board is de novo (see Miss. Code Ann. § 25-9-131(1) (Rev.1999)), we observe from our review of the evidence presented before the hearing officer that Carver does not contend that the reasons stated for disciplining him "are not true." Rather, his principal contention (and the only contention accepted by the hearing officer as ground to grant relief) seems to be a variation on the theme that his criminal offenses were not so significant as to merit a permanent demotion in rank and its attendant reduction in salary. More specifically, though neither Carver nor the hearing officer couch their analysis in the particular language relating to the principle, it appears evident that Carver would have us hold that his employing agency was estopped to impose a harsher penalty than that suggested by the former occupant of the Director's position.
¶ 11. There are any number of reasons, both factual and legal, as to why this is not the proper case to apply the doctrine of estoppel. We will deal first with the factual difficulties in Carver's position. There are two.
¶ 12. First, the record is clear that, even by Carver's own evidence, Director Ward's predecessor in office, who was Colonel Stringer, offered his informal opinion as to a proper discipline at a time when he was aware only of allegations relating to the 1996 offense. The only witness supporting Carver's position that he was promised a ten-day suspension without pay was Highway Patrol Captain Jimmy Holly, who testified that Carver came to him in the Spring of 1997 and, exasperated with attempts to resolve the pending Idaho charges which were "costing him an arm and a leg," asked if he might be told "what he could expect if he pled guilty to those charges." Holly testified that he passed the inquiry up the chain of command to Colonel McNeese, and that Colonel McNeese later told him that he had spoken to Colonel Stringer about Carver's inquiry, and "he said ten days." There is no indication that Colonel Stringer was acquainted with the fact that the 1996 incident was not the only instance of alleged criminal conduct in which Carver was involved. In fact, the record shows that not even Carver was aware that federal authorities were in the process of making a prosecutorial decision in regard to the entirely separate incident alleged to have occurred in 1992.
¶ 13. Carver, in his own testimony, acknowledges that, though he obtained Colonel Stringer's opinion of a proper discipline for the 1996 offense in the spring of 1997, he was not notified of potential federal *717 charges for the earlier offense until June of that year. He attempts to explain away the impact of the federal charges on the severity of his discipline by pointing out that he was permitted to enter into a pre-trial diversion program and "since I wasn't admitting to anything, that [the fact of the federal charges] wouldn't be held against me." We find Carver's position regarding the effect of entering a diversion program for the purpose of avoiding a criminal conviction on the right of his employing agency to discipline him for his conduct to be untenable. It is not the fact of a conviction that necessarily forms the basis for a disciplinary action. It is the conduct itself that demonstrates "acts of conduct occurring ... off the job which are plainly related to job performance ... and are of such nature ... [that they] could constitute negligence in regard to the agency's duties to the public ..." as set out in the Department's General Orders regarding the conduct of its employees. More to the point, even an outright acquittal in a criminal proceeding would not answer unequivocally the right of a state agency to discipline an employee based on the alleged underlying conduct that led to the criminal charges since the standard of proof to criminally convict and to support a personnel action are substantially different. Holly v. Mississippi Dep't of Corrections, 722 So.2d 632, 636 (Miss. 1998).
¶ 14. There is simply no basis in fact to conclude that Colonel Stringer would have persisted in his opinion that a ten day suspension was an appropriate sanction for one wild game violation in another state after learning that the offender was further being subjected to potential criminal prosecution for a federal game violation occurring at another time. Carver's attempt to explain away the impact of this added criminal behavior by saying simply that he did not believe it ought to be held against him is without logical or legal force. The hearing officer, in giving effect to an alleged representation made at a time when the full facts were unknown, acted arbitrarily.
¶ 15. Secondly, from a factual standpoint, we observe that Colonel Stringer left his position and Director Ward assumed the same slot in late April 1997. Carver did not enter his plea on the Idaho charges until May 21, 1997. He did not even learn that he faced potential federal charges for an entirely separate incident until the following month. Carver did not waive his right to a disciplinary hearing until January 1998. There is no evidence that Carver had reason to believe that Director Ward (who had been on the job for over eight months when Carver waived his right to a hearing and agreed to accept "any penalty assessed") had agreed to abide by his predecessor's informal indication of what an appropriate sanction would be if the fact of Carver's criminal activity was established. Director Ward, in fact, testified that he was not even aware that his predecessor had made such a statement, and that testimony is not rebutted in the record.
¶ 16. There may be some tendency, in attempting to analyze the factual situation of this case, to view the alleged understanding between Colonel Stringer and Carver as something akin to a plea agreement in a criminal proceeding in which Carver waived his right to contest the existence of grounds to discipline him in exchange for some assurance as to the severity of the discipline. We will not adopt an interpretation of the events of this case that would permit the disciplinary process for public employees to be short-circuited by an informal sub rosa agreement such as Carver contends existed here. Such agreements, the terms of which would remain secret while the disciplinary *718 process appeared to proceed according to regulations, would effectively convert the formal disciplinary process to nothing more than a meaningless show trial, the outcome of which was predetermined. In so holding, we do not reach the question of whether appropriate aboveboard discussions might be held with the aim of resolving disciplinary proceedings by agreement mutually satisfactory to the employee and the disciplining agency. That is not the situation in which the controversy before us now arose and we do not offer any opinion as to that subject.

III.

Legality
¶ 17. As we have observed, the hearing officer (as later confirmed by the full Appeals Board) couched his decision solely on the basis that the agency gave its "word" as to the anticipated discipline and ought to be required to honor its word. While such a pronouncement may arguably seem to conform to recognizable principles of honor and integrity, we are unable to conclude that the statement articulates a recognizable precept of law that can be applied to decide the case. Apparently recognizing this, Carver, in his brief, couches the question as one of estoppel, claiming that he entered his guilty plea to the Idaho charges in reliance on Colonel Stringer's representation to him that the proper discipline for committing a violation of an Idaho wild game law would be a ten-day suspension.
¶ 18. If the concept of estoppel is to have application in this case, then there must be some reasonable basis to conclude that all of the essential elements to invoke the doctrine were shown. Estoppel requires a number of essential elements: (1) a representation that later proves to be untrue, (2) an action by the person seeking to invoke the doctrine, such action being undertaken in justifiable reliance on the representation, and (3) a resulting detriment to that person arising from his action. Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1229 (Miss.2000).
¶ 19. As a matter of law, we do not think estoppel has any application to the facts of this case. Even overlooking the substantial problem as to whether Carver's alleged continued reliance on an alleged comment by Colonel Stringer relayed third-hand to Carver was justified reliance, we are still faced with the problem that Carver did not, insofar as this record demonstrates, change his position to his detriment based on Colonel Stringer's alleged comment. Accepting all of Carver's facts as true, all he did in reliance on Colonel Stringer's statement was to desist from further efforts to avoid conviction for an alleged offense that had occurred prior to the institution of the disciplinary investigation. We reiterate that the underlying basis for the discipline is the fact of the offense itself and not whether Carver had decided to no longer contest the Idaho criminal charges. In order for Carver's decision to abandon any effort to avoid conviction in Idaho to be a detrimental changewhich is essential to give rise to a successful estoppel claimhe would have had to demonstrate the probability or at least some reasonable likelihood that he ultimately could have avoided conviction and further could have done so in such a manner that his employing agency would have found it appropriate to abandon any further disciplinary proceedings (since, as we have already seen, even a verdict of acquittal on the Idaho charges would not unequivocally have ended Carver's disciplinary problems with the Mississippi Highway Safety Patrol). There is not any evidence in the record to suggest that Carver's decision to end his active defense of the Idaho criminal proceedings was detrimental *719 in the sense that he was induced to abandon a process that would have otherwise led to his complete exoneration on the Idaho game law charges.
¶ 20. Additionally, there is certainly nothing in the record to show that Carver was induced to cease an active defense to the federal wild game charges in reliance on Colonel Stringer's comments for the good reason that all matters relating to those separate matters occurred after the then-director's comments were alleged to have been made.
¶ 21. Because of the absence of evidence to support a finding that this essential element for invoking the doctrine of estoppel existed, any attempt to bolster the facially-deficient findings of the hearing officer as adopted by the full Appeals Board as being a correct decision reached for the wrong reason must fail.
¶ 22. There is no basis in law or equity that this Court can discover that would suggest the appropriateness of compelling the Mississippi Department of Public Safety to be bound by alleged informal remarks offered by a former director of the Mississippi Highway Safety Patrol regarding his view of an appropriate discipline for a state trooper found to have committed a wild game violation in another State. There is certainly no basis in law or in equity to compel the Department to remain bound to that former director's view when, by the time the disciplinary proceeding arrived at the disposition stage, that same state trooper had effectively admitted his involvement in an entirely separate enterprise that resulted in federal criminal charges being instituted against him.
¶ 23. The discipline imposed on Carver was, in view of the nature of the offense, within the limits authorized by the Patrol's Standing Order governing trooper conduct both on and off the job. Carver did not deny the fact of the conduct, either at the Department level or before the Appeals Board. Thus, as to the first avenue for potential relief provided Carver under the statute, it is clear that this appeal must fail. Miss.Code Ann. § 25-9-127(1) (Rev. 1999). As to the only remaining ground for relief mentioned in the statute, i.e., that the reasons to discipline were "not sufficient grounds for the action taken," we find no basis to conclude that the punishment imposed was unreasonably harsh, especially in view of the fact that the regulations specifically permitted discharge from employment upon a finding that such a disciplinary offense had been committed. Miss.Code Ann. § 25-9-127(1) (Rev.1999). A state employee employed as a law enforcement officer ought reasonably to expect to be held to a high standard of conduct both on and off duty and should be prepared to pay a substantial price when it is shown that he has purposely chosen a path of behavior that demonstrates a wilful disregard for the law.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING and SOUTHWICK, P.JJ. and THOMAS and CHANDLER, JJ. CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, IRVING and MYERS, JJ. BRANTLEY, J., NOT PARTICIPATING.
BRIDGES, J., dissenting:
¶ 25. I respectfully dissent. The majority in this case chooses to believe the Employee Appeals Board and the circuit court made legally erroneous decisions which are not supported by evidence, thus causing the decisions to be arbitrary and capricious. I disagree. The majority has *720 not shown how Carver's off duty acts are of such a nature that MDPS could be considered negligent in its duty to the people by not demoting him. The lower court and the Full Commission did not mis-apply the law, and there was a great deal of evidence offered supporting the findings of the lower court which the majority chooses to ignore.
¶ 26. Since the majority did not do this, I must point out that the Mississippi Department of Public Safety (MDPS) incorrectly stated the standard of review for this Court in its brief. MDPS stated the standard of review for this Court in reviewing decisions from the Employee Appeals Board is stated in section 25-9-132 of the Mississippi Code. That is incorrect. This statute deals with the standard of review used by this Court in cases where the employee seeks judicial review. No appeal by an administrative agency is authorized by section 25-9-132. Miss.Code Ann. § 25-9-132 (Rev.1999). Bertucci v. Mississippi Dep't of Corr., 597 So.2d 643, 644 (Miss.1992).
¶ 27. This Court's proper standard of review for this type of an appeal was stated in the case of Gill v. Mississippi Department of Wildlife Conservation, 574 So.2d 586, 590 (Miss.1990):
On the other hand, should the record and proceedings below reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and, as a matter appearing on the face of the record or proceedings, subject to modification or reversal. We thus are in our familiar posture of judicial review of administrative processes wherein we may interfere only where the board or agency's decision is arbitrary and capricious, accepting in principle the notion that a decision unsupported by any evidence is by definition arbitrary and capricious.
Therefore, the main question to be asked in this case is whether there was sufficient evidence presented which supports the ruling of the lower court, thus preventing the lower court's decision from being considered arbitrary and capricious. This is a very limited type of review.
¶ 28. The majority makes two arguments in support of its reversal of the lower court: (1) that MDPS was acting within its powers when it punished Carver, and (2) that equitable estoppel does not apply to this case. These two arguments are inter-related because the outcome of the first is dependant upon the outcome of the second. In support of the first argument the majority states MDPS acted in accordance within its own rules. Demotion is one of the possible penalties which can be imposed when one of MDPS's employees is convicted of a misdemeanor (MDPS treats a guilty plea the same as a conviction). Carver argues he pled guilty to the Idaho misdemeanors only because he was offered assurances from his supervisor that he would receive a ten day suspension. In essence, Carver argues MDPS was equitably estopped from demoting him.
¶ 29. "Equitable estoppel requires a representation by a party, reliance by the other party, and a change in position by the relying party." Westbrook v. City of Jackson, 665 So.2d 833, 839 (Miss.1995). In addition, equitable estoppel is an available remedy for an individual to use against the state, its counties, subdivisions and municipalities. Board of Trustees of Monroe County Bd. of Educ. v. Rye, 521 So.2d 900, 908 (Miss.1988). MDPS is a political subdivision of the State of Mississippi, and thus this case law applies to it.
¶ 30. Even though MDPS was within its power under its rules to discipline Carver, it was equitably estopped from doing so because of the decision of its acting *721 head, Colonel Stringer. Carver asked Captain Jimmy Holly what would happen to him if he pled guilty. Holly did not know, but said he would ask Lieutenant Colonel McNeese. Colonel McNeese did not know either, so he asked Colonel Stringer, the acting head of MDPS what would happen. Stringer told McNeese that if Carver pled guilty, Carver would receive a ten day suspension without pay. Carver relied on the representations he received through the MDPS chain of command, statements made by agents of MDPS, and changed his position by pleading guilty to the misdemeanor charges. Carver also changed his position by waiving his right to a performance review board hearing. This fulfills the elements of equitable estoppel. Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954(¶ 26) (Miss. 1999).
¶ 31. The majority claims equitable estoppel should not apply to Carver because they believe Carver did not actually detrimentally change his position, but only "desisted from further efforts to avoid conviction for an alleged offense that had occurred prior to the institution of the disciplinary investigation." The majority goes on to claim that in order for Carver to prove the change was detrimental, he must prove he could have avoided conviction in such a way as to make it appropriate for MDPS to abandon disciplinary proceedings. These statements and arguments made by the majority are not supported by case law.
¶ 32. I do not understand how admitting guilt to any crime can be considered anything but a detrimental change of position. Our system of laws assumes all people are innocent until proven guilty, and in pleading guilty a person thereby gives up this protection. By relying on the statements made by the director of MDPS, Carver gave up the presumption of innocence and admitted guilt to a crime. Carver has worked for the Mississippi Highway Patrol for twenty-five years, has never been brought up on disciplinary charges before, and is well thought of by his fellow officers. For such an officer to plead guilty to a crime, it must be considered a detrimental change of position. Carver also relied on Stringer's statements by waiving his right to a performance review board hearing, a hearing designed to protect his property rights. Carver gave up the right to protect his job at a hearing because he had been assured he would not be demoted if he pled guilty. This also must be considered detrimental.
¶ 33. MDPS argues that at the time the representation was made to Carver, no one knew of Carver's impending federal charges. Because of this, MDPS claims incomplete representations were made to it regarding the charges against Carver, and therefore equitable estoppel does not apply. The evidence in this case proves Carver did not receive notice of the federal charges until June 29, 1997, almost one month after Carver had pled guilty on May 21, 1997. Surely Carver cannot be held to have withheld information of which he did not even know.
¶ 34. The majority argues there is nothing to indicate Stringer might have changed the penalty once he found out about the federal charges. Conversely, there is also no evidence indicating Stringer would not have changed the penalty once he discovered the federal charges. This argument changes nothing because Carver had already begun relying on Stringer's representations. The important factor is the point at which Carver began to rely on the representations of MDPS. Carver began relying on the representations of MDPS on May 21, 1997, when he *722 pled guilty. Even though disciplinary charges were brought against Carver on January 21, 1998, equitable estoppel would still prevent MDPS from reneging on the representations of its ranking officer.
¶ 35. The majority claims MDPS should not be bound by the representations of former employees. The person who made the representations to Carver in this case was not an entry level employee of MDPS. This was the head of MDPS, a position which makes administrative and disciplinary decisions quite frequently, some of which are similar to the ones made by the new head of MDPS who is appealing this case. Why should the decisions of the leader of MDPS not be honored? He is the highest ranking officer in MDPS. It makes sense that the things he commits to will be done.
¶ 36. The record also includes more evidence supporting the trial court's decision to uphold the decision of the Full Board. It was stipulated in the record that Carver had previously had a spotless record during his twenty-five years as a patrolman, and the fact Carver was an excellent trooper was also stipulated. Carver put five witnesses on the stand. The first was Captain Jimmy G. Holly, who testified Carver was responsible, fit, competent, and knew how to do his job. Officer Robert Young Williford testified Carver was the best supervisor he ever had, and the conviction would not affect Carver's ability to function in his job. Officer William Henry Cotton testified Carver was competent, fit, trustworthy, respected, and Carver has not been negligent in anything. Officer Robert Terry McFadden testified Carver could get the job done, and the conviction would not affect his performance in his job. Officer Thomas Michael Mullins testified Carver was fit, competent, trustworthy, and not negligent. This testimony, along with his record, provides an adequate basis for the trial court's decision. Carver's reinstatement was based on sufficient evidence.
¶ 37. I am of the opinion the ruling of the trial court was not arbitrary and capricious, and that Carver's off duty acts would not cause MDPS to be considered negligent in its duties to the public. The lower court's ruling was supported by sufficient evidence, and this Court is in error for reversing it. Therefore, I respectfully dissent.
LEE, IRVING and MYERS, JJ., JOIN THIS SEPARATE OPINION.