880 So.2d 1065 (2004)
Cindy M. LYNCH and Deborah L. Fullen, Appellants,
v.
MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.
No. 2002-CA-02099-COA.
Court of Appeals of Mississippi.
March 30, 2004.
Rehearing Denied June 8, 2004.
Certiorari Denied August 26, 2004.
*1067 Joseph E. Roberts, Roderick D. Ward, Jackson, attorneys for appellants.
Michael Wayne Baxter, Ridgeland, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES and LEE, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Mississippi Farm Bureau Casualty Insurance Company was granted summary judgment by a circuit court judge. Lynch appeals arguing there are genuine issues of material fact. We find that summary judgment was properly granted. Consequently, we affirm.
¶ 2. On October 31, 1995, Cindy Lynch was in an automobile accident with Deborah Fullen. Mrs. Lynch's vehicle was insured under a Farm Bureau automobile insurance policy issued in her husband William's name. The Lynches reported the accident to Farm Bureau, who informed them that there was no coverage on the vehicle on the date of the accident. Farm Bureau never received the insurance renewal premium which was due by October 1, 1995. The Lynches argued that their vehicle was in fact still covered by the policy because they had mailed the renewal premium payment prior to the October 1 deadline. Farm Bureau filed for a declaratory judgment against the Lynches and Fullen to determine the existence of coverage. The Lynches filed a counterclaim. After some discovery, Farm Bureau's motion for summary judgment was granted. Mr. Lynch died prior to final judgment below. Mrs. Lynch and Fullen appeal.[1]

DISCUSSION

1. Summary judgment evidence
¶ 3. The trial judge ruled without providing an opportunity for a trial. Summary judgment cannot substitute for a trial to resolve disputes of material fact, but neither should a trial on undisputed material facts substitute for a summary judgment. Wolf v. Stanley Works, 757 So.2d 316, 319 (Miss.Ct.App.2000). The appellate court in reviewing such a judgment stands in the shoes of the trial judge and evaluates anew whether the materials submitted on the motion demonstrate that there is no dispute of material fact. McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996). In order for a fact to be material to the case, it must have a tendency to resolve an issue. Perry Sansing, "Summary Judgment," § 11:1, in 1 JEFFREY JACKSON (ED), MISSISSIPPI CIVIL PROCEDURE (2003). A dispute as to such a fact requires supporting evidence for the party who is contesting the motion.
¶ 4. Most of the facts presented to the trial judge are undisputed, though that means simply that there was no basis on which to contest most of them. An insurance policy between the Lynches and Farm Bureau existed with an expiration date of October 1, 1995. It provided that the "term of the policy shall be from the effective date of 4/01/95 to 10/01/95 at 12:01 A.M., standard time at the address shown above and for such succeeding terms of 6 calendar months hereafter as *1068 the required renewal premium is paid by the insured on or before expiration of the current term accepted by the company." This was signed by William Lynch. Notice was sent by Farm Bureau to the Lynches in September 1995 of the imminent expiration of the policy and the amount of the premium required for renewal. The notice stated that in order to have "continuous protection your payment should be received prior to the date due." It also asked that the Lynches "please pay the amount due ... on or before due date 10/1/95."
¶ 5. On behalf of the claimants, there is an undisputed, i.e., uncontestable assertion that the premium to renew was mailed on September 27 from a City of Madison post office to Farm Bureau's mail box in the City of Jackson. On behalf of Farm Bureau, there is an undisputed, i.e., uncontestable assertion that the premium has never been received. Farm Bureau revealed that its practice is to give policy holders a twelve-day grace period after the date for receipt. If the premium is received during that time, the policy is renewed with no lapse in coverage. Farm Bureau asserted that on October 16, it mailed both to the Lynches and to the holder of the lien on the Lynch's vehicle a termination notice. The Lynches assert that they never received the notice, and there was evidence that the lienholder told Farm Bureau that it had not received the termination notice either.
¶ 6. Unchallenged evidence appeared regarding related factual issues. The Lynches' statement from the bank on which a check to Farm Bureau would have been drawn was introduced. The premium check did not appear on the statement. The statement was dated October 19, 1995, but there was no evidence of when it was mailed nor when it was received.
¶ 7. Farm Bureau showed that there had been four prior late payments. One example was from July 1993. The premium was due on July 1 but was not timely received. A termination notice went out. The Lynches then made payment, and the policy was reinstated with an effective date of July 29, 1993, which was a four week break in coverage. We note, and will return to its importance later, that the Lynches denied ever being late on prior payments or ever getting a termination notice.
¶ 8. With these as the uncontested facts, we turn to whether they entitled Farm Bureau to judgment or whether there were factual matters remaining for which a trial was necessary.

2. Law regarding actual receipt of insurance premium
¶ 9. This case concerns non-renewal of an insurance policy. Under Mississippi law, renewal is "the issuance of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate of notice extending the term of a policy beyond its policy period or term." Miss.Code Ann. § 83-11-1(e) (Rev.1999). No notice by the insurance company to the policyholder is required when a policy is not renewed due to nonpayment of premiums. JEFFREY JACKSON, MISSISSIPPI INSURANCE LAW & PRACTICE § 2:16, at 2-35 (2001) (explaining case law and statutes that make this result clear). Farm Bureau claims that both the policy and the renewal notice provided that the payment had to be received by the company by the due date of October 1. Mr. Lynch in a deposition stated that he understood that the premium actually had to be received by October 1 for the policy to remain in force.
*1069 ¶ 10. An insurance company may require that a premium actually be received by a certain date in order for the policy to be renewed. Id. § 2:4, at 2-13, citing Pasco Enter. Inc. v. Southland Ins. Agency, 408 So.2d 63, 67 (Miss.1981). In Pasco, after the policy had lapsed for nonpayment, the premium for renewal was delivered to an insurance agent, who then failed to send the payment to the company. The insurance company had a right to require, and it had required, that the payment be received at the company office before renewal would be effective. Pasco, 408 So.2d at 67.
¶ 11. The next year, the Supreme Court distinguished Pasco in an appeal that addressed the obligations of the Mississippi Insurance Underwriting Association, a legislatively-created entity "formed in 1970 to provide property insurance coverage not otherwise available to residents of the Mississippi Gulf Coast." Miss. Ins. Underwriting Ass'n v. Maenza, 413 So.2d 1384, 1385 n. 1 (Miss.1982). The Court quoted a statutory provision that a policy issued by this association "shall be renewed annually, upon application therefor," if certain conditions were met. Id. at 1386, quoting Miss.Code Ann. § 83-35-15(2) (1972), repealed by 1987 Miss. Laws ch. 459, § 18. The statutory word "application" was equated to the act of putting a renewal premium into the mail, which then meant that a policy was renewed if the premium was mailed in sufficient time to reach the company prior to the policy expiration date. Id. at 1386-87.
¶ 12. Also of importance, any person aggrieved by the state association's decision about a claim was first to present the dispute to the Mississippi Insurance Commission. 1970 Miss. Laws ch. 451, § 11. The commission decided that the mailing of the renewal premium was sufficient under the statutes governing the state Insurance Underwriting Association. Deference was given to the commission's decision under usual administrative law principles. Maenza, 413 So.2d at 1389.
¶ 13. The Court more generally referred to the "postal acceptance rule," which was defined in this way: "where it is the practice and custom of the insurance company to accept premium payments by mail, the deposit of a check in the mail in time to reach the insurance company will avoid a forfeiture even though the check does not reach the company until afterwards." Id. at 1388. The rule was said to have been adopted in a 1932 case. Id., citing Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217, 224 (1932).
¶ 14. The Maenza court distinguished the Pasco holding that an insurance company could require that the premium actually be received in its home office by a certain date in this way:

Pasco involved the party to whom payments could be made in order to reinstate insurance coverage whereas the instant case involves the mode of payment to renew coverage. In Pasco the question was whether payment of premiums to the local agent to reinstate a policy after the policy had expired will bind the insurance company when the local agent does not forward the payment. Here the issue is whether the deposit in the mail of a premium prior to the expiration date of the policy will be effective to renew the policy when the premium arrives at the insurance company's office after the expiration date of the policy. Pasco dealt with an insured, a local agent, and an insurance company, whereas the instant case deals with an insured and a statutorily created agency. In Pasco Justice Hawkins noted that the local agent had not received any payments from the insureds before the policies had terminated, but here the *1070 policies had not terminated before payment was placed in the mail to renew the policies. In the instant case, MIUA accepted the payment forwarded through the mails and made no attempt to refund.
Maenza, 413 So.2d at 1388.
¶ 15. The Maenza court was certainly correct that Pasco did not raise the factual applicability of the postal acceptance rule, since the insured never mailed anything to anyone relevant in the case. The distinctions just quoted included the difference between reinstating a terminated policy and renewing a current one, the use of an agent when the notice said not to send payments to the agent, and the past practice of mailed payments being accepted. The court also noted as a distinction that a statutorily created agency was involved, and the statute was interpreted to require continuation of coverage if the "application" for renewal was timely mailed.
¶ 16. Maenza did not overrule Pasco. Mississippi law acknowledges that the standard insurance policy is a contract, and its terms are a matter of usual contract interpretation unless some statutory imperative controls. Pasco, 408 So.2d at 68 (insurance company "had a right to provide as a condition precedent to the reinstatement of any policy with it that the premium be received at the home office in Elba, Alabama"); Nationwide Mut. Ins. Co. v. Garriga, 636 So.2d 658, 662 (Miss.1994) ("a clear and unambiguous [insurance] contract will be enforced as written.") Nothing in any statute pointed out to us as applicable to this insurance company (as opposed to the statutes that created and then controlled the association in Maenza), provide that a policyholder's mailing the premium must be equated to receipt by the company.
¶ 17. Instead, as we analyze these precedents, the mail acceptance rule applies unless the policy clearly requires actual receipt and not just mailing. Ambiguity in terms is at the risk of the drafter of the policy, namely, the insurance company. State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So.2d 1371, 1372-73 (Miss.1981). We turn to the language here for what it unambiguously requires.
¶ 18. The language in the policy and on the renewal notice provided by Farm Bureau is that payment was to be in its possession on or before the due date. The policy would terminate unless "the required renewal premium is paid by the insured on or before expiration of the current term...." What "paid" meant is shown on the renewal notice: "For continuous protection your payment should be received prior to the date due." The policyholder's understanding is expressed in William Lynch's deposition. He was asked: "And it was your understanding, that Farm Bureau had to receive the premium on or before the due date?" He answered: "Correct." Contract interpretation is a search for the intention of the parties. The parties agreed in the evidence presented on summary judgment that the intention was to have the premium received by the due date.
¶ 19. There is not in this Farm Bureau policy any language such as in the statute involved in Maenza, which had provided that the policy through the state association "shall be renewed annually, upon application therefor," nor is there any other provision which modifies the requirement of actual receipt. It is true that the usual practice was for Farm Bureau to receive premiums by mail. Indeed, the notice of renewal included only a post office box address. Nonetheless, the insured's explicit obligation to cause the premium to be received by the due date is not canceled by the fact that no hand-delivery is readily *1071 achieved. Higher-postage delivery, certified or registered mail, and phone calls to the home office to determine if payment was received, all were available as protections. The insurance company's practice of permitting a twelve-day delay in receipt of premium provided another means by which even unreasonably delayed mail was likely to cause the premium to be received timely or for inquiries by the insured to discover the failure to receive and be able to correct it. The evidence of the bank statement, indicating that the check for the premium had not been presented for payment, ultimately is irrelevant. The Lynches had a variety of means by which to determine that the premium had not been received other than through the bank statement.
¶ 20. We find nothing in a federal precedent on which Lynch relies to suggest a different result. In that appeal, the court found that an insurance policy is a contract, making the intent of the parties controlling when the legal effect of mailing the premium is evaluated. Estate of Beinhauer v. Aetna Cas. & Sur. Co., 893 F.2d 782, 786 (5th Cir.1990). The Fifth Circuit reversed a summary judgment due to a fact issue on whether the insured had ever mailed a payment, though the payment was never received by the insurer. Id. The eminent Mississippi jurist, Chief Judge Charles Clark, noted in Beinhauer that the "legal effect of mailing an insurance premium is a contractual matter controlled by the intent of the parties." The starting premise was that when the "policy does not otherwise define the term `payment,'" the mailing of the premium would suffice. Id. In the present case, the policy did otherwise define what "payment" meant. We agree with the Beinhauer analysis, apply it, and reach a different outcome because of clear contract language.
¶ 21. The policy itself and the notice of renewal unambiguously informed the Lynches, and they admitted that they so understood, that the premium was to be received by October 1 or else a lapse in coverage would occur. That lapse continued beyond the date of the accident. Absent some other principle of law, Farm Bureau was within its contractual right to deny coverage.

3. Waiver and estoppel
¶ 22. The salient additional doctrine that at least must be considered is whether a custom and practice established between the parties caused a waiver by or estoppel of the insurer.
Waiver is the voluntary relinquishment of known right. Estoppel, on the other hand, exists where one party's conduct induces another to change position "that would result in harm if the first party's acts were repudiated." Stated differently, estoppel, or equitable estoppel, arises when three conditions are met. First, one party believes or relies on the representation of another party. Second, this belief or reliance causes the party to change position as a result thereof. Third, the change of position causes detriment or prejudice to the party who changes position.
JACKSON, MISSISSIPPI INSURANCE LAW § 6:3, at 6-3 and 6-4 (footnotes omitted; interior quote from Pitts v. Am. Sec. Life Ins., 931 F.2d 351, 357 (5th Cir.1991)).
¶ 23. The only possible waiver shown on this record is the fact that Farm Bureau gave a twelve-day grace period for receipt of a premium. Had the accident occurred during that period and Farm Bureau were to argue that the policy had lapsed immediately on the due date for the premium, then waiver would be a relevant issue. We do not find waiver to exist on these facts.
*1072 ¶ 24. As to estoppel, Lynch admits that there is usually no obligation on the part of an insurer to send a notice that the policy has been terminated because of nonpayment of premiums. See Willis v. Miss. Farm Bureau Mut. Ins., 481 So.2d 256, 259 (Miss.1985). On prior occasions when the premium was not received, Farm Bureau would send a termination notice. Counsel for Lynch argues in the appellate brief that this practice came to be relied upon by the Lynches and constituted a more direct and reasonable notice of nonpayment than perusing the bank statement. Lynch speculated that had a termination letter been sent and received this time, the policy might have been reinstated prior to the accident on October 31, fifteen days after Farm Bureau's records stated that a notice was actually sent. Lynch alleges that there is a fact issue on whether one was sent this time.
¶ 25. There is caselaw that if an insurance company creates a belief in the mind of a policyholder through past practices "that payment may be delayed until demanded, or otherwise waives the right to demand a forfeiture, this is binding on the company...." Willis, 481 So.2d at 260, quoting Home Prot. of N. Ala. v. Avery, 85 Ala. 348, 5 So. 143, 145 (1888). The estoppel or waiver argued here is somewhat different. The possible past practice was that if the Lynches paid after receiving the termination notice, there still was a lapse in coverage. Until the payment was received, the Lynches were without coverage just as the policy indicated. There was a forfeiture. What such a practice would provide was an opportunity for the Lynches to avoid a long period of lapsed coverage. Farm Bureau's evidence is that the practice was continued here, regardless of whether the postal servicean agency about which all parties have separate complaints in this casemade a delivery.
¶ 26. In determining the effect of estoppel, we note that there is a doctrine occasionally recognized in Mississippi and at least as often ignored that waiver and estoppel cannot be used to extend or create coverage. Grain Dealers Mut. Ins. Co. v. Ellis, 234 So.2d 925, 927 (Miss.1970). Cases such as Willis address the coverage issue without mentioning the doctrine. Being uncertain of its current vitality, we ignore this principle.
¶ 27. The following is a useful enumeration of the elements of estoppel that we need to apply here:
Estoppel requires a number of essential elements: (1) a representation that later proves to be untrue, (2) an action by the person seeking to invoke the doctrine, such action being undertaken in justifiable reliance on the representation, and (3) a resulting detriment to that person arising from his action. Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1229 (Miss.2000).
Miss. Dept. of Pub. Safety v. Carver, 809 So.2d 713, 718 (Miss.Ct.App.2001). Making specific these general elements, we conclude that evidence must exist of a past practice that Farm Bureau would send a notice when a premium was not received and that the company failed to do so in October 1995. Secondly, the Lynches must have justifiably relied on the practice. Finally, reliance on the practice of sending termination notices prejudiced the Lynches by causing them not to have renewed their policy when they would have done so had the customary notice been sent.
¶ 28. We now search for evidence that would at least create fact issues on each element.
¶ 29. Departure from past practice. Farm Bureau's own evidence revealed that it was the company's practice with all its *1073 policy holders to send a termination notice fairly promptly after the twelve-day grace period expired for payment of the premium. To rely on the practice, the Lynches must have known of it. If only one prior situation occurred in which the Lynches received a termination notice and then paid the late premium, that single event is not a "custom" and therefore cannot create an estoppel. Cole v. Motors Ins. Corp., 243 So.2d 556, 557 (Miss.1971).
¶ 30. There was evidence of four prior occasions in which a Lynch policy with Farm Bureau lapsed and then was revived with a late premium. What was unclear was how many times a termination notice was sent, triggering the sending of a late payment, and how many times the premium payment was sent late by the Lynches prior to being prompted by Farm Bureau. We note here and explore more below that the Lynches denied ever having previously been late with a premium.
¶ 31. There must also be evidence that Farm Bureau departed from the custom. The company presented computer records that it mailed notice on October 16 both to the Lynches and to the lienholder. The Lynches denied receiving the termination notice, and a Farm Bureau employee was told by the lienholder in a phone call that it had not received the notice.
¶ 32. The question is whether this evidence created a dispute of material fact that the past practice was abandoned in this situation. The relevant fact is Farm Bureau's mailing, not anyone's receipt. If Farm Bureau mailed a notice and the postal service failed in delivery, there is no estoppel of Farm Bureau since the past practice was Farm Bureau's use of the mails to send notice. We would not adopt some variant of the "mail acceptance rule" to a custom and practice matter such as this. On this record, there is little but speculation which could be used to determine whether the problem was of Farm Bureau's making or instead arose after the company placed the termination letter within the control of the postal service.
¶ 33. We find the question a close one of whether any dispute of material fact existed on Farm Bureau's mailing of a termination letter. We leave this element and examine the next one.
¶ 34. Justifiable reliance on absence of notice. The action taken by the Lynches in this case in possible reliance on a Farm Bureau custom is actually an omission. They failed to renew their policy. Perhaps another apt characterization is that they failed to take other steps to assure that their premium had been received. Was there reliance on past practice and was it justifiable?
¶ 35. Determining when reliance is justified may be evaluated using this test: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[2] RESTATEMENT (2D) CONTRACTS § 90 (1981). There was no "promise" here on which reliance may have occurred, but there was a custom. The same analysis of justifiable reliance is serviceable for both. The justification and the reliance are examined from the perspective of both parties. Would Farm Bureau by creating a practice of sending termination notices reasonably expect its policyholders to come to rely on that notice, and was this policy holder in fact relying on the notice?
*1074 ¶ 36. The ultimate problem with estoppel in this appeal is one of evidence of reliance. In response to arguments made by Farm Bureau in its appellate brief, Lynch argued in her reply brief that she and her husband had relied on the previous termination letters as notice that payments had not been received. However, Mr. Lynch in his deposition stated that he was the family member who paid the premiums on the policy. Mrs. Lynch in answers to interrogatories stated that she "has no first-hand knowledge of the payment of the renewal premium" in October 1995. So any reliance would have to be by Mr. Lynch. He testified that he did not recall ever being late with a premium payment to Farm Bureau. He further stated that the policy had never been nonrenewed for failure to pay a renewal premium. In requests for admissions, both of the Lynches denied that they had any "history of lapses of coverage under [the] Farm Bureau policy" involved in this case.
¶ 37. Mr. Lynch's statements were inconsistent with Farm Bureau's records, but the issue before us now is reliance and not the fact of late premiums. Farm Bureau had no knowledge about whether either member of the Lynch family had come to rely on termination notices. Since as far as Mr. Lynch could remember, he had always paid on time, he offered no evidence to support reliance, justified or otherwise, on a Farm Bureau practice of sending termination notices.
¶ 38. Summary judgment tests whether there are disputes of material fact. The evidence on which the motion is resolved is presumed to be the evidence available to the parties. Had this been a trial, and based on Mr. Lynch's disclaimer of reliance on any past practice, rejection of estoppel would have been required. It was appropriate on summary judgment as well.
¶ 39. Prejudice. The Lynches must show not only that they were relying in this instance on a custom of being sent a termination letter, but that the reliance is what caused them the prejudice of not having insurance coverage on the date of the accident. We find no need to discuss the issue.
¶ 40. Conclusion. There is no dispute of material fact regarding reliance on a custom or practice. No evidence is in the record of such a reliance. The possibility of estoppel does not therefore arise.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.
NOTES
[1] Deborah Fullen adopted the arguments of the brief of Cindy Lynch and did not make a separate analysis. Consequently, we refer to the appellants simply as "Lynch."
[2] Because of our other conclusions, we need not examine whether injustice is avoided only if the custom is maintained. See RESTATEMENT (2D) CONTRACTS § 139(2) (1981).