16 So.3d 721 (2009)
Patrick DELIMAN and Jane Deliman, Appellants,
v.
Anthony Clarke THOMAS and ACT Environmental, Inc., a Mississippi Corporation; Kenneth G. Robinson and Lynda S. Robinson, Appellees.
No. 2007-CA-00868-COA.
Court of Appeals of Mississippi.
February 17, 2009.
Rehearing Denied June 16, 2009.
Certiorari Denied September 3, 2009.
*722 Mitchell Harry Tyner, Jackson, Attorney for Appellants.
Keith W. Turner, Jackson, Attorney for Appellees.
EN BANC.
KING, C.J., for the Court.
¶ 1. Patrick and Jane Deliman appeal from the order of the chancellor granting the motion to quash and dissolve the writ of garnishment, quashing subpoenas, and awarding attorney's fees to Anthony Clarke Thomas and ACT Environmental, Inc.(ACT).[1]
¶ 2. The Delimans raise issues on appeal before the Court concerning whether the chancellor abused her discretion in finding that Thomas and ACT were not in default in the judgment owed to the Delimans and whether the chancellor abused her discretion in awarding Thomas and ACT attorney's fees. The Delimans also raise an issue as to whether the chancellor should have estopped Thomas and ACT based on the equitable principle of unclean hands.
*723 ¶ 3. The three specific issues were stated by the appellants as follows:
1. THE CHANCELLOR WAS MANIFESTLY WRONG, CLEARLY ERRONEOUS, AND APPLIED THE WRONG LEGAL STANDARD IN ABATING THE DELIMANS' EXECUTION EFFORTS AND FAILING TO RECOGNIZE THAT, IN LIGHT OF INDISPUTABLE EVIDENCE OF THE DEFENDANTS' DEFAULT, THE DELIMANS HAD IMMEDIATE RIGHT TO EXECUTE UNDER THE FINAL JUDGMENT AND MISSISSIPPI LAW.
2. THE CHANCELLOR WAS MANIFESTLY WRONG, CLEARLY ERRONEOUS, AND APPLIED THE WRONG LEGAL STANDARD IN FINDING THAT THE DEFENDANTS WERE ENTITLED TO AN AWARD OF ATTORNEY'S FEES IN THE AMOUNT OF $7,662.87 UNDER THE PROVISIONS OF THE MISSISSIPPI LITIGATION ACCOUNTABILITY ACT, MISS. CODE ANN. § 11-55-1, ET SEQ.

3. THE CHANCELLOR WAS MANIFESTLY WRONG, CLEARLY ERRONEOUS, AND APPLIED THE WRONG LEGAL STANDARD IN FAILING TO ESTOP THE DEFENDANTS' MOTIONS TO QUASH AND ABATE EXECUTION BECAUSE THE DEFENDANTS WERE NOT PROCEEDING WITH CLEAN HANDS AND WERE MAKING ARGUMENTS CONTRARY TO POSITIONS THEY PREVIOUSLY TOOK IN THE LITIGATION.
¶ 4. Finding no error, the Court affirms the order of the chancellor.

FACTS
¶ 5. On August 15, 2005, the Delimans filed a complaint against Thomas and ACT arising out of a dispute involving the sale of real property. A default judgment was entered against Thomas and ACT on February 13, 2006, for failure to answer the complaint and for failure of counsel for Thomas and ACT to appear at the default hearing. Thomas and ACT were unsuccessful in getting the court to set aside the default judgment.
¶ 6. A hearing was held on damages on August 2, 2006, and the court entered its opinion awarding the Delimans $44,163.75 in attorney's fees. An amended order was entered changing the amount to $45,343.75. The court gave Thomas and ACT the option of either monthly installments of $1,500 to the Tyner Law Firm or payment in full. Thomas and ACT exercised the option of monthly payments. The specific language in the order is at issue:
Execution of which is stayed to allow Anthony Clarke Thomas and ACT Environmental, Inc. to pay the entire amount on or before October 30, 2006; or elect to make monthly payments to the Tyner Law firm of $1,500 a month, on or before the 30th of each month, until paid in full.....
Should Anthony Clarke Thomas or ACT Environmental, Inc. miss one (1) payment or default on any payment or fail to make an election by October 20, 2006, the stay of execution will immediately lift and the Delimans may execute this judgment.
¶ 7. Thomas and ACT exercised the option of making monthly payments. Thomas thereafter mailed the October and November payments by regular mail. After making these two payments, Thomas noticed that his payments were not being negotiated or deposited by the Tyner Law Firm. Upon the advice of counsel, Thomas mailed the December payment by certified mail.
*724 ¶ 8. It is the December payment which is at issue in this case. The payment was mailed by certified mail on December 22, 2006, but was not accepted by the Tyner Law Firm. The postal service made three attempts to deliver the certified letter, which was ultimately returned to Thomas as unclaimed. The envelope showing the three attempts to deliver the letter was produced at the hearing.
¶ 9. Thomas testified that when the certified mail envelope was returned to him he called the Tyner Law Firm and explained to the office manager the problem. Thomas was told that the January payment had already been received, and that he should place the December payment back in the mail using regular mail.
¶ 10. After having received both the December and the January payments, the Tyler Law Firm, on behalf of the Delimans, filed the suggestions of writ of garnishment on February 5, 2007, against BancorpSouth, BankPlus, Merchants and Farmers Bank, and Citizens National Bank.
¶ 11. Thomas filed in chancery court a motion to quash the garnishments and subpoenas. The chancellor granted the motions and awarded Thomas and ACT $7,662.87 in attorney's fees and costs. The court imposed the judgment on the grounds that the Delimans had sought execution in bad faith.
¶ 12. This appeal is from the order quashing the garnishments and subpoenas and awarding Thomas and ACT the attorney's fees.

STANDARD OF REVIEW
¶ 13. The Court employs a limited standard of review on appeals from chancery court. Miller v. Pannell, 815 So.2d 1117, 1119(¶ 9) (Miss.2002). The Court will review a chancellor's decision under an abuse of discretion standard. Id. The Court will not disturb a chancellor's findings unless they are manifestly wrong or clearly erroneous or the court has applied an incorrect legal standard. In re Estate of Ladner v. Ladner, 909 So.2d 1051, 1054(¶ 6) (Miss. 2004). The chancellor's interpretation and application of the law is review de novo. Id.

DISCUSSION

1. The Garnishment Proceedings
¶ 14. The Delimans argue that there was "indisputable evidence" of the default by Thomas and ACT and that they, the Delimans, had an immediate right to execute under the judgment and Mississippi law. They argue that it was error for the chancellor to find that the December payment was timely transmitted under the final judgment and that Thomas made "good faith efforts" to ensure that the payment was made.
¶ 15. The reason for what the Delimans termed "a technical deficiency" was known to the Tyner Law Firm prior to instituting garnishment proceedings. As the Court found, "[c]ounsel for Plaintiffs [the Delimans] either knew, or should have known, of Defendants' [Thomas's and ACT's] effort to tend the payments in question." No explanation was given at the hearing as to why the certified letter was unclaimed or why the postal service returned the letter to Thomas. Thomas testified that he verified that the correct address was on the envelope. The law firm had also received the January payment, and there is no indication that they notified Thomas and ACT that the December payment was not being considered as timely received under the court's order.
¶ 16. This situation is such that there is apparently no other Mississippi case which has construed this matter. The chancellor *725 analogizes the situation to that of the "mail box rule." The chancellor stated that "there are more than many litigated issues regarding placing something into the Postal Service as being the date of delivery." Although this is not a perfect analogy, it does provide some insight, more so than the Delimans' comparison made at the hearing to the notice of appeal.
¶ 17. Thomas and ACT cite Lynch v. Mississippi Farm Bureau Casualty Insurance Co., 880 So.2d 1065, 1071(¶ 20) (Miss.Ct.App.2004) (citing Estate of Beinhauer v. Aetna Casualty & Surety Co., 893 F.2d 782, 786 (5th Cir.1990)). These cases deal with insurance contracts and whether payment has been timely made on the premium. In Beinhauer, the court held that when the policy did not otherwise define the term payment, the mailing of the premium would be sufficient. Beinhauer, 893 F.2d at 786. In Lynch, the court found that the policy was unambiguous in informing the parties the premium had to be received by a certain date otherwise a lapse in coverage would occur. Lynch, 880 So.2d at 1071(¶ 21). As in Beinhauer, the law firm had invited or acquiesced in payment by mail, and Thomas had mailed the payment in time to reach the law firm by the payment date.
¶ 18. In this case, Thomas had to "make monthly payments before the 30th of each month." The language of the order does not require that the payment be received by the date specified in the order. Here, the law firm was aware that Thomas had made the monthly payment or attempted to make the payment prior to the due date and prior to garnishment proceedings being instituted. The Court has not been able to find the specific requirement in the order that any default be brought back to the chancery court for review, but this does not invalidate the chancellor's decision to quash the garnishment.
¶ 19. The use of certified mail is often the preferred method used by the courts. Thomas testified that based on advice of counsel, certified mail was used to make the December payment because the previous payments had not been negotiated. In this case, the chancellor specified that all future payments should be by certified mail.
¶ 20. The Court does not find that the chancellor abused her discretion in entering the order quashing the garnishment and the subpoenas. There is no merit to this assignment of error.

2. The Award of Attorney's Fees
¶ 21. Mississippi Rule of Civil Procedure 45(f) provides:
(f) Sanctions. On motion of a party or of the person upon whom a subpoena for the production of books, papers, documents, or tangible things is served and upon a showing that the subpoena power is being exercised in bad faith or in such manner as unreasonable to annoy, embarrass, or oppress the party or the person upon whom the subpoena is served, the court in which the action is pending shall order the subpoena to be quashed and may enter such further order as justice may require to curb abuse of the powers granted under this rule. To this end, the court may impose an appropriate sanction.
The comment to the rule states that the appropriate sanction "ordinarily will include attorney's fees and costs...." M.R.C.P. 45(f) cmt.
¶ 22. Mississippi Code Annotated section 11-55-5(1) (Rev.2002) further provides:
Except as otherwise provided in this chapter, in any civil action commenced *726 or appealed in any court of record in this state, the counsel shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party of attorney if the court, upon motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
¶ 23. It is difficult to believe that the Delimans thought that they had any hope of success in these garnishment proceedings. See Anderson v. B.H. Acquisition, Inc., 771 So.2d 914, 922(¶ 23) (Miss.2000). Although the Delimans argue "[t]here is no evidence that the Delimans or their counsel knew or should have known prior to the expiration of the deadline for payment that Thomas was making `good faith efforts' to pay," there is considerable evidence that the Delimans or their counsel knew or should have known prior to filing for garnishment of the "good faith efforts" of Thomas to make the December payment. Both the December and January payments had been received by counsel prior to the garnishment proceedings, and the counsel for the Delimans also knew or should have known of the problem with the delivery of the certified mail to the Tyner Law Firm. As the chancellor stated: "It is regrettable that the manner with which we have the Judgment Debtor using is the United States Postal Service, because no one can guarantee the behavior of a third party."
¶ 24. The decision of the chancellor to impose sanctions against the Delimans is consistent with the decision that the garnishment was unreasonable. The award of attorney's fees was not clearly erroneous. The Court finds no merit to this assignment of error.

3. The Equitable Principle of Unclean Hands
¶ 25. This third issue was not raised at the hearing or before the chancellor. Consequently, as Thomas and ACT note, the issue is not properly before this Court on appeal. See R.W. Aiken Ins. Agency, Inc. v. SevenOaks Capitol Corp., 930 So.2d 444, 448(¶ 15) (Miss.Ct.App. 2006).
¶ 26. As stated by the Delimans, the doctrine of unclean hands mandates that the party who comes into equity must come with clean hands, citing Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss.1970); Cook v. Whiddon, 866 So.2d 494, 498(¶ 13) (Miss.Ct.App.2004). The Delimans contend that the unclean hands doctrine prevents a complaining party from obtaining equitable relief when the party is guilty of wilful misconduct in the transaction at issue, citing Bailey v. Bailey, 724 So.2d 335, 337(¶ 6) (Miss.1998).
¶ 27. In addition to finding that the issue is not properly before the Court, the Court also finds that the doctrine of unclean hands is not applicable to this situation. There is no evidence of "wilful misconduct" on the part of Thomas and ACT. Thomas sent the December payment by certified mail to the address of the Delimans' counsel with the intent that the payment would be made and timely received. This is a commonly accepted and not unreasonable business practice. This Court fails to see how the embrace of this commonly accepted business practice could be considered as misconduct, much less *727 wilful misconduct. There is no merit to any of the assignments of error raised by the Delimans.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.
IRVING, J., Dissenting.
¶ 29. The majority finds that the chancellor did not err in finding that Patrick and Jane Deliman acted in bad faith when they executed on a valid judgment that they had received against Anthony Clarke Thomas and Act Environmental, Inc. (Act) and, therefore, should be required to pay the attorney's fees incurred by Thomas and Act to halt the execution proceedings. I believe that a proper analysis of the evidence compels the conclusion that, prior to the initiation of the execution proceedings by the Delimans, Thomas and Act had violated the terms of the stay of execution contained in the judgment. Therefore, I cannot agree with the majority that the chancellor was correct in halting the execution and assessing attorney's fees to the Delimans. Consequently, I dissent. For the reasons to be discussed herein, I would reverse and render the judgment of the Madison County Chancery Court.
¶ 30. It is necessary that additional facts be set forth to aid the illumination of my disagreement with the majority. At least two prior judgments of the chancery court are implicated by the findings of fact contained in the judgment forming the basis of this appeal: an original judgment that was entered on October 16, 2006, and an amended final judgment that was entered on December 8, 2006.
¶ 31. The pertinent language from the original judgment entered on October 16 is as follows:
IT IS FURTHER ORDERED AND ADJUDGED that Patrick N. Deliman and Jane M. Deliman are awarded a judgment of $44,163.75 plus interest at eight percent (8%). Execution of which is stayed, to allow Anthony Clarke Thomas and ACT Environmental, Inc., to pay the entire amount on or before October 30, 2006; or elect to make monthly payments to the Tyner Law Firm of $1,500 a month, on or before the 30th of each month, until paid in full. Anthony Clarke Thomas and Act Environmental, Inc. shall select a plan of payment by no later than October 20, 2006; by making an election in writing to the Tyner Law Firm and filing a copy of the election with the Court. Should Anthony Clark Thomas or ACT Environmental, Inc. miss one (1) payment or default on any payment or fail to make an election by October 20, 2006, the stay of execution will immediately lift and the Delimans may execute this judgment.

(Emphasis added).
¶ 32. The December 8 amended judgment, which was entered as a result of a motion to amend filed by the Delimans on October 27, 2006, provides in pertinent part as follows:
IT IS FURTHER ORDERED AND ADJUDGED that Patrick N. Deliman and Jane M. Deliman are awarded a judgment of $45,343.75 plus interest at eight percent (8%). Execution of which is stayed, to allow Anthony Clarke Thomas and ACT Environmental, Inc., to pay the entire amount on or before October 30, 2006; or elect to make *728 monthly payments to the Tyner Law Firm of $1,500 a month, on or before the 30th of each month, until paid in full. Anthony Clarke Thomas and Act Environmental, Inc. shall select a plan of payment by no later than October 15, 2006; by making an election in writing to the Tyner Law Firm and filing a copy of the election with the Court. Should Anthony Clark Thomas or ACT Environmental, Inc. miss one (1) payment or default on any payment, the Delimans will be awarded a judgment for the remaining balance, with eight percent (8%) interest from entry of this Opinion and Final Judgment.

(Emphasis added).
¶ 33. It is readily apparent that the relevant provisions of the two judgments are materially different. First, the October 16 judgment stays execution of the judgment and gives Thomas and Act the right to elect to pay the judgment in a single payment or in installment payments.[2] Second, in case of default in a single payment, the stay is lifted automatically, and the Delimans are free to execute on the judgment. On the other hand, the December 8 judgment stays the execution but provides for the right of an election of payment that cannot be exercised because the deadline for the exercise of the right of election predates the date of the judgment.[3] Third, the December 8 judgment does not seem to provide for an automatic lifting of the stay in case of default, as it provides that in case of default, the Delimans will be awarded a judgment for the remaining balance. Fourth, the amount of the December 8 judgment is greater than the amount of the October 16 judgment.
¶ 34. There is no question that the December 8 judgment is not an amendment to the October 16 judgment, because the December 8 judgment does not mention the October 16 judgment in any respect. However, it is my opinion that the December 8 judgment is void, because, as will be explained later in this dissent, the chancery court lacked jurisdiction when it was entered. Therefore, this dissent assumes that the appropriate judgment is the October 16 judgment. The December 8 judgment was entered pursuant to a posttrial motion filed by the Delimans. As stated, the record reflects that the original judgment was entered on October 16. The record further reflects that the posttrial motion to amend was dated October 26 but was not filed until October 27, which was one day too late. Pursuant to Rule 59(e) of the Mississippi Rules of Civil Procedure, all motions to amend must be filed within ten days after entry of the judgment.
¶ 35. Therefore, it is my opinion that the chancellor erred in basing any portion of her findings in the judgment that is the focus of this appeal on the requirements of the December 8 judgment. But, before addressing the judgment that is the focus of this appeal, I briefly visit the facts giving rise to the two judgments mentioned above.
¶ 36. On or about December 11, 2003, the Delimans purchased two lots in Madisonville Estates Subdivision in Madison County, Mississippi from Thomas, who served as president of Act. The Delimans filed suit against Thomas and Act after learning that the property was subject to easements that had not been disclosed to *729 them.[4] Thomas and Act failed to answer the complaint, and the chancery court entered a default judgment against them. After a subsequent hearing, held to determine the amount of damages, the chancery court entered the October 16, 2006 judgment mentioned earlier in this opinion.
¶ 37. On December 22, 2006, Thomas mailed, by certified mail, return receipt requested, a letter to the Tyner Law Firm, P.A., the law firm representing the Delimans. The letter was returned to Thomas on about January 30, 2007, marked unclaimed, return to sender.[5] There are several other notations on the letter. However, no witness from the United States Postal Service was called to offer any explanation about any of the notations. To be thorough in my analysis, I give a full and complete recitation of all of the notations contained on the letter that was returned. In the right hand corner of the letter, is a stamp bearing the following notations: "Jan 30, FIRST NOTICE, 4, SECOND NOTICE; Feb 14, RETURN." I presume the year, which is omitted, is 2007. The left hand corner of the letter contains this handwritten notation: "12-26-06, 1-4-7, 1-10-7." Above these numbers is what appears to be the following notation: HC. As stated, no witness offered an explanation for these notations.[6] Therefore, there is no basis in this record for the following statements of fact contained in the majority opinion: "The postal service made three attempts to deliver the certified letter, which was ultimately returned to Thomas as unclaimed. The envelope showing the three attempts to deliver the letter was produced at the hearing." Majority opinion (¶ 8). While that may very well be the case, we all know or have heard of cases where postal workers have mishandled mail. In this case, it is indeed perplexing why a letter that was mailed certified, return receipt requested, on December 22, 2006, was not returned to the sender until January 30, 2007. It is equally perplexing that one of the notations seem to indicate a return of February 14. However, as stated, we were not informed in the record as to what all of this means.
¶ 38. It is undisputed that the Tyner Law Firm did not receive the payment that was due on December 30, 2006, until February 2, 2007. This is the payment that, according to Thomas, was mailed by certified mail, return receipt requested, on December 22, 2006, and was the third payment mailed to the Tyner Law Firm after the October 16, 2006 judgment.[7] As stated, *730 the December 22, 2006 letter was not returned to Thomas until around January 30, 2007. In the meantime, according to Thomas's testimony, he did nothing to track the letter. He made no inquires to the United States Postal Service, even though he had not received his return receipt. More importantly, however, he made no inquiry to the Tyner Law Firm until the letter was returned to him on or about January 30, 2007, even though he knew that he was required, by the October 16, 2006 judgment, to get the payment to the Delimans by December 30, 2006.
¶ 39. On February 7, 2007, the Delimans began execution on their judgment by sending out several suggestions for writ of garnishment. After Thomas's bank account was garnished, he initiated an action to quash the garnishments, leading to the judgment that underlies this appeal. I now turn to the pertinent portion of that judgment.
¶ 40. After a hearing on Thomas's motion to quash the writs of garnishment, the chancellor quashed the writs and issued an order and judgment containing the following provisions:
2. Under the terms of both the original Judgment and the Amended Judgment, Defendants Anthony Clarke Thomas ("Mr. Thomas") and ACT Environmental, Inc. ("ACT") (collectively, "Defendants") were to elect either a lump[-]sum payment of the attorneys' fees awarded at trial, or a payment plan by which Defendants were to submit monthly payments of $1,500.00 by the 30th day of each month. Defendants elected to make monthly payments.
3. Thereafter, Defendants submitted payments for the months of October and November which were not cashed until late December. Because of concern over the fact that the first two payments were not cashed, Defendants timely transmitted their December payment via certified mail. The certified envelope was not picked up by counsel for the Plaintiffs, and was eventually returned to the Defendants. Mr. Thomas thereafter made good faith efforts to contact the office of Plaintiffs' counsel to inquire about transmitting the December payment.
4. In spite of the timely transmission of the December payment and in spite of Mr. Thomas' good faith efforts to make inquires to Plaintiffs' counsel regarding the payment, counsel for Plaintiffs caused a Writ of Garnishment to be issued on or about February 5, 2007, and thereafter served on a bank account maintained by Defendant ACT at BankPlus on or about February 14, 2007. The [w]rit of garnishment froze approximately $5,000 in the account, denying Defendants use of the funds.
* * * * * *
7. The Court finds that these collection efforts undertaken by the Plaintiffs were unwarranted and unauthorized under the terms of the original Judgment and the Amended Judgment. The Amended Judgment does not by itself authorize execution or other collection efforts. Instead, it specifically contemplates a two-step process before Plaintiffs would be authorized to pursue post-judgment remedies. The Plaintiffs were first required to submit an additional judgment to the Court specifying the default and requesting that they be authorized to pursue measures to collect the judgment. Once such a judgment would have been entered, the Plaintiffs would have been barred from pursuing post-judgment *731 remedies for a period of ten (10) days pursuant to MRCP 62(a).
8. The Plaintiffs failed to abide by the terms of the Amended Judgment, and furthermore failed to abide by Mississippi law governing post-judgment collection remedies. Furthermore, Plaintiffs' efforts in this regard were wholly unreasonable, in that Defendants made good faith efforts to tender the third payment of $1,500.00 in December. Counsel for Plaintiffs either knew, or should have known, of Defendants' efforts to tender the payment in question.
9. Consequently, Plaintiffs' counsel's decision to initiate post-judgment collection efforts, despite the language of the Amended Judgment requiring an additional submission to the Court, and despite Defendants' good faith efforts to make the December payment, can only be characterized as premature, overly aggressive, and in bad faith. No just reason existed under the law and facts for Plaintiffs' counsel to cause the Writ of Garnishment or the Subpoenas Duces Tecum to be issued and served. Plaintiffs' counsel's failure to adhere to the requirements of Miss.Code Ann. § 13-1-245, as delineated above, is further evidence of the bad faith inherent in the collection efforts initiated by Plaintiffs' counsel.
¶ 41. I first note that notwithstanding the chancellor's finding that Thomas made good faith efforts to contact the Delimans' counsel regarding the December payment, there is not substantial evidence in the record to support this finding. On this point, the record reflects the following testimony from Thomas on cross-examination by the Delimans' attorney:
Q. Mr. Thomas, you understand that you are supposed to make these payments, and they are to be at Tyner Law Firm before the 30th of the month; is that correct?
A. That's correct. Yes.
Q. And you made your initial payment in October; is that correct?
A. Yes.
Q. And that would have been for October 30, correct?
A. Yes.
Q. And did you make that by certified mail or by regular mail?
A. Regular mail.
Q. And then your second payment would have been due November 30, correct?
A. Yes.
Q. And you made that payment; is that right?
A. Yes.
Q. And you sent that by certified mail or by regular mail?
A. Regular mail.
Q. And now today you're claiming that your third payment you sent by certified mail, correct?
A. Yes.
Q. Okay. Now, tell me, why would you send it by certified mail, return receipt requested?
A. Because when I checked my bank balance on reconciling my checking account, the checks that I had mailed you did not clear. So I was concerned that something had happened, so I verified the address, talked with Watkins Ludlam, and they suggested that I send everything certified so that it wouldn't be a problem.
Q. Okay. But your fourth payment, how did you send it?
A. I believe, after I talked with Martha [an employee of the Tyner Law Firm], she indicated she had receivedI *732 mailed it regular mail is the answer to your question.
Q. Okay. So you made the first two regular mail, the third one certified mail, and then the fourth one regular mail?
A. Right.
Q. Okay. Now, when you have the return receipt-that's the little green card on the back, right?
A. Correct. Yes.
Q. Now, you expect to get that back to verify that it had been received, correct?
A. Yes.
Q. Okay. And did you get that green card back, and was it signed?
A. No. I got the entire document back.
Q. Okay. So you knew your payment was due on the 30th, and you mailed it on the 22nd, but by the 30th you hadn't gotten the green card back, had you?
A. No.
Q. Now, when you send it certified, you can also track it, right?
* * * * * *
A. I'm not sure, but I assume, yes.
Q. Did you do anything to try to track it since you hadn't gotten the green card back?
A. I called your office.
Q. You did that when?
A. When I got the
Q. You testified a minute ago that it was approximately
THE COURT: Let him answer the question Mr. Tyner.
A. No, I did not try to track it.
Q. Okay. And you testified a minute ago it was approximately six weeks laterthe February 14 day, [sic] six weeks after it was duethat you contacted our office.
[THOMAS'S ATTORNEY]: Objection.
THE COURT: On what grounds?
[THOMAS'S ATTORNEY]: Compound and misleading.
THE COURT: Compound and misleading. I disagree. Overruled. Please answer the question.
A. Yes, I did contact your office once I received the entire document back.
Q. And that was approximately six weeks after the payment was due; is that right?

A. Yes.

Q. Okay. Now, Mr. Thomas, you said you were carefully watching whether or not these checks were clearing, correct?
A. Yes.
Q. Okay. And a moment ago, we introduced an Exhibit No. 1 into the record. Do you recall that?
A. I do.
Q. Would you look on there and look at that bank statement. Is that the December 31st bank statement?
A. Yes.
Q. Had your payment cleared?
A. No, sir.
Q. And after you saw the third payment hadn't cleared when you looked on your statement, did you take any action at that time to check on the third payment?
A. No, sir. Based on the fact that it took almost two months for the first payment to clear, I didn't necessarily think there was something wrong.
Q. Okay. So you didn't get the green card back, correct?
A. Yes.

*733 Q. And you didn't go online to verify that it had gotten paid, correct?
A. No, sir.
Q. You did not go online?
A. No. I don't have an online [sic].
Q. So you didn't track it?
A. No.
Q. And then when you got the statement where it would have cleared, you didn't do anything either, did you?
A. No, sir.
(Emphasis added).
¶ 42. One thing comes through very clear from the above colloquy: Thomas was very nonchalant about his obligation to make sure that the Delimans timely received the installments. However, the issue is not whether he was nonchalant, but whether he missed or defaulted in making the December 2006 payment by December 30, 2006, according to the terms and conditions of the October 16 judgment.
¶ 43. The majority finds that the judgment did not require that the payment be received by the 30th of each monththat it was sufficient that the payment be mailed. I disagree. First, the judgment is silent as to the method of payment. Therefore, there is no reason to assume or find that mailing was the intended mode of tender. Second, placing the onerousness on the judgment creditor to make sure that a mailing (not receipt) of a payment has occurred before exercising his legitimate right of execution seems contrary to the norms of business practices. Third, interpreting the October 16 judgment in the manner employed by the majority prevents a judgment creditor from receiving, on a timely basis, the benefit of its judgment. In this case, the Delimans were denied the use and benefit of an installment payment for over thirty days. Consider this. Suppose after mailing the installment, Thomas had left the state or country for an extended period of time, and for whatever reason, the payment was not received. Should the Delimans be required to await his return to inquire if the payment was timely mailed before seeking to execute on their judgment? By the express terms of the October 16 judgment, Thomas and Act were required to make, not mail, their installment payment to the Tyner Law Firm on or before the thirtieth of each month. There is no reason to conclude that the Tyner Law Firm refused to accept the payment. There is nothing in the record that would permit such an inference. As stated earlier, the letter that was mailed on December 22, 2006, was returned unclaimed, rather than, not refused. Thomas did not attempt to contact the firm until after the letter was returnedapproximately six weeks after it was mailed. For all we know, the firm may have been shut down for the Christmas holidays and could not claim the letter.
¶ 44. I note that Rule 4(c)(5) of the Mississippi Rules of Civil Procedure, which provides for service of process by certified mail on a nonresident, specifies that service of process "shall be deemed complete as of the date of delivery [not attempted delivery] as evidenced by the return receipt or by the returned envelope marked `Refused.'" While Rule 4 involves the service of process to commence a legal action, I see no reason why the reasoning behind the rule should not be employed here where the issue is: at what point is the delivery of a court-ordered payment complete or made when the payment is tendered by certified mail, return receipt requested.
¶ 45. Finally, even if I am incorrect in my view that Thomas and Act did not make their December 2006 payment by December 30, 2006, I still believe that the *734 judgment of the chancery court should be reversed, because, at a minimum, the October 16 judgment is ambiguous on the issue of when a payment that is sent by mail is made. Therefore, I can find no justifiable reason for exacting a penalty in the form of attorney's fees against the Delimans in this case. While the Delimans certainly had received the payment before they instituted the garnishment proceedings, that does not obscure the fact that if the payment was not made by December 30, a default occurred. Once a default occurred, they were entitled to execute. The judgment does not grant Thomas and Act the right to default and then prevent the lifting of the stay by curing the default. For the reasons presented, I dissent.
NOTES
[1] Anthony Clarke Thomas's name is spelled as "Clark" and "Clarke" in the record. For consistency we will spell the name as "Clarke"; however, in the quotations, we have left the name as it appears.
[2] The judgment provides that the election of payment had to be exercised by October 20. The record reveals that on October 20, Thomas made a timely election to make installment payments.
[3] The deadline to exercise the right of election was October 15.
[4] These easements allowed wastewater to be drained onto the Delimans' lots.
[5] It is important in my view, as will be discussed later in this dissent, that the notation says unclaimed as opposed to refused. According to Thomas, the letter contained the December 30, 2006 payment, which was the third installment payment following entry of the judgment.
[6] As stated, I included the notations only for the sake of thoroughness. Since no witness testified as to what they represent, no inference may be drawn from them for the purpose of finding any adjudicative fact. That is made clear by Rule 201(a) and (b) of the Mississippi Rules of Evidence, which provides as follows:

(a) Scope of Rule. This rule governs only judicial notice of adjudicative facts.
(b) Kinds of Facts. A judicially notice fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
[7] Thomas testified that he mailed the October and November payments by regular mail, but because the checks representing those payments were not timely cashed, he became concerned and checked with his lawyer about what to do. He was advised to send the December payment by certified mail. It is noteworthy, however, that Thomas also testified that he sent the fourth payment by regular mail.